**FILED**

**April 12, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 18-0448 - In Re A.P.-1, A.P.-2, A.P.-3

WORKMAN, Justice, concurring, in part, and dissenting, in part:

I concur with the majority that the adjudication and disposition determinations should have been made in separate hearings under the procedural status of this case and a very limited remand for a dispositional hearing is appropriate. I vehemently disagree, however, with several other points of the majority opinion which will be set forth in summary form and then discussed at length in this opinion.

First, the majority erred in holding that the lower court lacked continuing jurisdiction in this case once the circuit court initially declined to adjudicate the petitioner father as having abandoned the children. Further, in not permitting the existing proceedings to continue on remand, and instead offering the Department of Health and Human Resources ("DHHR") the *option* of filing a new petition, the majority has essentially created the potential of the children *never* having a permanent placement.

Second, the majority missed an opportunity to clarify that long-term incarceration is a form of neglect, when the applicable statutes are read in pari materia, as the law requires.

1

Third, the majority opinion leaves total confusion on whether incarceration can be considered at both the adjudicatory and dispositional stages by including language both in the body of the opinion and in a footnote that are inconsistent on their face. Clearly, both under the law and in the realm of basic common sense, the factors relating to incarceration as enunciated in *In Re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011), are a valid consideration in and can support a finding at either stage when the applicable criteria are met.

## I. Discussion

Incarceration as a Form of Neglect

From the perspective of overall abuse and neglect law, the most significant problem with the majority opinion is the missed opportunity to clarify that abandonment engendered by long-term incarceration can be a form of neglect, when the statutory definitions of each concept are considered in pari materia, as required by law.

The abandonment of a child is defined as "any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child." W.Va. Code § 49-1-201 (2015 & Supp. 2018). A "neglected child" is defined, in pertinent part, as a child,

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of

2

financial means on the part of the parent, guardian, or custodian[.]

*Id.* These statutory definitions of abandonment and neglect are part of a body of legislation that was enacted to protect the welfare of children. To that end, it is essential to remember that "effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, in part, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975).

In giving each of these statutory definitions effect so as to accomplish the critically important legislative purpose of protecting the welfare of children, one is led to the inescapable conclusion that an incarcerated parent can be adjudicated as having abandoned his or her child[ren] through evidence of the parent's inability to meet even the most minimal parental duties and responsibilities to the child[ren]. Moreover, it is clear that the statutory definition of neglect encompasses not only abandonment, as defined by statute, but also incarceration, so long as the factors surrounding that incarceration demonstrate that the parent is unable to provide the basic needs of his child[ren] as described in the neglect definition.

In the case at bar, DHHR filed a petition against the petitioner which made broad allegations of "Abuse and/or Neglect and/or Abandonment." Nonetheless, it is apparent that the circuit court considered the statutory definition of abandonment in isolation

3

during the initial adjudicatory phase without also considering and giving effect to the statutory definition of neglect. W.Va. Code § 49-1-201; *see also Smith,* 159 W.Va. at 109, 219 S.E.2d at 362, syl. pt. 2, in part. Because the petitioner presented evidence that showed his continued interest in his children following his incarceration, the circuit court declined to find that he had abandoned his children. It was, however, abundantly clear that the petitioner cannot possibly provide the children with their most basic daily needs during the next minimum 10-11 years incarceration. Consequently, he has effectively abandoned them under the neglect statute. W.Va. Code § 49-1-201. This was an error that the lower court later recognized and attempted to correct during the disposition hearing, where no new evidence was presented. The guardian ad litem simply advocated for the best interests of the children during that hearing in light of the petitioner's lengthy incarceration and the factors set forth in syllabus point three of *In Re Cecil T.*:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the *best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.*

228 W.Va. at 91, 717 S.E.2d at 875 (emphasis added).

4

Unquestionably, a parent whose term of incarceration is so lengthy that his children will be almost grown before the father is released from prison[1] is a critical consideration under the statutory definition of neglect and is a permissible consideration under *In re Cecil T*. Another consideration under *In re Cecil T.* is the nature of the offense. Here the petitioner committed murder, not a garden-variety, nonviolent crime, obviously without considering the impact of his criminal conduct on his children. His actions alone resulted in his lengthy term of incarceration, which will preclude him from meeting even his minimal parenting responsibilities.

In short, the *Cecil T.* factors, along with the statutory definitions for "abandonment" and "neglect" in West Virginia Code § 49-1-201, are all unquestioningly relevant to determining whether the Department has established that the parent is abusing or neglecting, as required by West Virginia Code § 49-4-601(I). Importantly, "[s]tatutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect." Syl. Pt. 3, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958); *accord* Syl. Pt. 2, in part, *Beckley v. Kirk*, 193 W.Va. 258, 455 S.E.2d 817 (1995) (same); Syl. Pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same

---

[1] Here, the petitioner will not be eligible for parole consideration until 2029, at which time the children will be ages 19, 17, and 14, respectively.

5

persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent.").

Although "[a] natural parent of an infant child does not forfeit his or her parental right to the custody of the child merely by reason of having been convicted of one or more charges of criminal offenses[,]" syl. pt. 2, *State ex rel. Acton v. Flowers*, 154 W.Va. 209, 174 S.E.2d 742 (1970), the majority should have clarified that a parent's incarceration, particularly a lengthy one, results in the child[ren] being neglected by that parent. Thus, even when an incarcerated parent's conduct reflects a continued interest in his or her children, the statutory definitions of abandonment and neglect must be considered together and under the circumstances of this case can result in an adjudication and/or disposition of abandonment/neglect and termination of parental rights. *Smith,* 159 W.Va. at 109, 219 S.E.2d at 362, syl. pt. 2, in part; *Graney,* 144 W.Va. at 72, 105 S.E.2d at 887, syl. pt. 3.

Ajudication v. Disposition

The majority further confuses the issue by making inconsistent statements regarding whether the *In re Cecil T.* factors can be considered on both the adjudication and disposition stages, or only at disposition. The opinion holds that:

> On its face, Syllabus Point 3 of *In re Cecil T.* applies only in the context of a lawful disposition hearing held after a circuit

6

court makes a finding of abuse or neglect at the adjudicatory hearing. Here, the circuit court lacked the continued jurisdiction to conduct a disposition hearing once it declined to adjudge Petitioner as having abandoned A.P.-1, A.P.-2, and A.P.-3. For that reason, *In re Cecil T.* could not have applied to Petitioner's case, below, nor could it have justified the termination of Petitioner's parental rights.

But the majority's accompanying footnote 29 makes a completely inconsistent (although I believe correct) statement of law to the effect that this blatant inconsistency leaves the law muddled up on this important issue:

> Circuit courts should be mindful that *In re Cecil T.* does not foreclose a finding at the adjudicatory stage that a parent's absence due to incarceration that harms or threatens the physical or mental health of the child is neglect. *See* W.Va. Code § 49-1-21 (defining "neglect"). Of course, in order for the circuit court to make the appropriate adjudication, it is incumbent upon DHHR to draft a petition that includes all the necessary allegations and that does not unduly restrict the circuit court's ability to make the requisite finding.

As stated, the petition here alleged both abandonment and abuse/neglect.

Apparently, because the *In re Cecil T.* case just happened to have been decided in the context of a disposition, the majority nonsensically suggests that the substance of the law of that case is not applicable at adjudication. It would be absurd to suggest that substantive law set forth by this Court in a child abuse and neglect case does not apply equally at all stages of the proceedings.

7

Continuing Jurisdiction of the Lower Court

The majority erred in holding that the lower court lacked continuing jurisdiction in this case once the Court initially declined to adjudicate the petitioner father as having abandoned the children. They are clearly wrong in not permitting the existing proceedings to continue on remand. Instead, the majority offers the DHHR the *option* of filing a new petition, essentially creating the potential of a child *never* having a permanent placement. Here, the DHHR made broad allegations of abuse and/or neglect and/or abandonment, thus covering all bases. In requiring that a new or amended petition would have to be filed, and indeed giving the DHHR the discretion on whether to do so, the majority creates the potential to leave these children without ever having a permanent placement.[2]

The majority relies on West Virginia Rule of Procedure for Child Abuse and Neglect Proceedings 19(b) to support their determination that a new petition would have to be filed. Rule 19(b) provides:

> If new allegations arise after the final adjudicatory hearing, the allegations should be included in an amended petition rather than in a separate petition in a new civil action, and the final

---

[2] The mother's rights have been terminated, the father is in prison for at least 10 more years, so there is currently no permanent placement for the children. My former colleague, Justice Richard Neely, used to characterize such unnecessary procedural obstacles as "death by due process."

8

adjudicatory hearing shall be re-opened for the purpose of hearing evidence on the new allegations in the amended petition.

Clearly, there were no new allegations.

In the instant case, the lower court revisited its initial adjudication decision and revised it. Indisputably, a court can always reconsider its earlier decision or ruling, which is precisely what the circuit court did here. As this Court has explained,

> [t]he doctrine of "inherent power" provides: "A court 'has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.'" Syllabus Point 3, *Shields v. Romine*, 122 W.Va. 639, 13 S.E.2d 16 (1940). The "inherent power" doctrine is "well recognized" in West Virginia. *See*, *e.g.*, *Daily Gazette v. Canady*, 175 W.Va. 249, 251, 332 S.E.2d 262, 264 (1985).
>
> • • • •
>
> This Court has recognized the desirability of circuit courts revisiting issues of substantial importance when fundamental rights are at stake: "We welcome the efforts of trial courts to correct errors they perceive before judgment is entered and while the adverse affects can be mitigated or abrogated." *State v. Jarvis*, 199 W.Va. 38, 45, 483 S.E.2d 38, 45 (1996).

*State ex rel. Crafton v. Burnside*, 207 W.Va. 74, 77 n.3, 528 S.E.2d 768, 771 n.3 (2000). Consequently, the circuit court had the authority and jurisdiction to revisit its earlier adjudicatory decision. Upon the circuit court's further consideration of the best interests of the children, the guardian ad litem's arguments, the petitioner's lengthy incarceration, and the factors provided in *In re Cecil T.*, the circuit court essentially reconsidered its earlier

9

refusal to adjudicate based on abandonment.[3]  228 W.Va. at 91, 717 S.E.2d at 875, syl. pt. 3.  In doing so, however, the circuit court should have continued the dispositional hearing to a later date, absent the parties' agreement to proceed immediately to disposition.[4]

As I conveyed in my dissent in *In re K.H.*, No. 18-0282, 2018 WL 6016722 (W.Va. Nov. 16, 2018) (memorandum decision), "our procedural rules are critically important and serve to ensure that due process is afforded all parties to an abuse and neglect proceeding." *Id.* at *8.  Moreover, I firmly believe that "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).  Through the majority's inordinate emphasis on the rights of parents while failing to balance the children's rights, the majority ignores more than a century of this Court's decisions[5] wherein we have reiterated, time and again, that the best interest and welfare of the child is the paramount consideration in matters involving

---

[3]  *See In re Timber M.*, 231 W.Va.44, 59, 743 S.E.2d 352, 367 (2013) *(*"[I]t is clear from our procedural rules, as well as our prior case law, that '[t]here cannot be too much advocacy for children.' *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 570, 490 S.E.2d 642, 657 (1997) (Workman, C.J., concurring).").

[4]  Rule 32(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that the disposition hearing may immediately follow the adjudication hearing if, inter alia, the parties agree and notice of such hearing was provided or waived by all parties.

[5]  While ignoring a body of case law developed over the last 100 years, the majority blithely refers to a divided decision just filed five months ago as "well-settled law."

child custody. *See* Syl. Pt. 2, *Cunningham v. Barnes*, 37 W.Va. 746, 17 S.E. 308 (1893) ("The welfare of the infant is the polar star by which the discretion of the court is to be guided; but the legal rights of the parent will be respected, being founded in nature and wisdom, unless they have been transferred or abandoned."); *Cariens v. Cariens*, 50 W.Va. 113, 119, 40 S.E. 335, 337 (1901) (finding "[t]he welfare of the child is the test" in custody determination); *Nestor v. Nestor*, 83 W.Va. 590, 98 S.E. 807 (1919) (recognizing that "[t]he welfare of the child is the guiding principle by which the court must be governed" in child custody case); *Rierson v. Rierson*, 107 W.Va. 321, 323, 148 S.E. 203, 204 (1929) ("While it is fundamentally true that in legal contests affecting the custody of children, their welfare is the primary consideration of the courts–the 'polar star' by which the discretion of the courts is to be guided[.]"); *Straughan v. Straughan*, 115 W.Va. 639, 177 S.E. 771, 772 (1934) (relying upon syllabus point two of *Cunningham*, 37 W.Va. 746, 17 S.E. 308, for guidance in custody decision); Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221(1948) ("In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided."); *Stout v. Massie*, 140 W.Va. 731, 736, 88 S.E.2d 51, 54 (1955) (quoting syllabus point two of *Joplin*, 131 W.Va. 302, 47 S.E.2d 221, and describing it as an "inflexible and controlling principle of law which has been frequently stated by this Court in determining the question of the custody of an infant"); *Holstein v. Holstein*, 152 W.Va. 119, 122, 160 S.E.2d 177, 180 (1968) (citing pertinent West Virginia law as supporting parties' agreement that "the welfare of the children is the

11

paramount and controlling factor" in custody contest); *State ex rel. Cash v. Lively,* 155 W.Va. 801, 804, 187 S.E.2d 601, 604 (1972) ("First and foremost in a contest involving the custody of a child is the consideration of that child's welfare. It has been held repeatedly by this Court that the welfare of the child is the polar star by which the discretion of the court will be guided."); *David M. v. Margaret M.*, 182 W.Va. 57, 60, 385 S.E.2d 912, 916 (1989) (The "child's welfare is the paramount and controlling factor in all custody matters.") (citations omitted); Syl. Pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996) ("In visitation as well as custody matters, we have traditionally held paramount the best interests of the child."); *State ex rel. Jeanette H. v. Pancake,* 207 W.Va. 154, 163, 529 S.E.2d 865, 874 (2000) (citing *In re Katie S.*,198 W.Va. 79, 479 S.E.2d 589, and finding that "in considering the private interests that will be affected by termination proceedings, utmost priority must be given to the best interests of the child(ren) involved."); *In re Kaitlyn P.*, 225 W.Va. 123, 127, 690 S.E.2d 131, 135 (2010) (recognizing that parents have substantial rights that must be protected, but also that welfare of child is "polar star by which the discretion of the court will be guided") (citations omitted).

To facilitate achieving the primary goal of the health and welfare of the children, our circuit courts must follow the clearly delineated procedures for adjudication and disposition in child abuse and neglect matters, which serve to protect the rights of children, as well as their parents. The lower court's modification of adjudication was completely

appropriate and the proceeding should have only been remanded for a separate dispositional hearing.

The Children's Best Interests

In conclusion, I encourage the circuit court (if the matter returns to court) to consider what will truly be in these children's best interest given their placement with a relative who has an amicable relationship with the petitioner. Particular consideration should be given to all available benefits for the children, including (if there is termination of rights) whether post-termination visitation might be appropriate.[6] Having lost both parents, the children are fortunate that another relative has stepped up to provide them the parenting they need on a daily basis during the many years to come, especially given that the youngest child is only four years old. It is imperative that steps are taken to ensure that this relative will be provided with all the help that the system can provide to her and whether termination, temporary or permanent guardianship, subsidized adoption, or some other option can provide the maximum financial benefit should be a consideration.

---

[6] *See* Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995) ("When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.").

13

## II. Conclusion

For these reasons, I concur in part and dissent in part to the decision reached by the majority of the Court in this matter.