STATE OF WEST VIRGINIA

In re: B.R.

No. 22-769 (Kanawha County 22-JA-209)

**FILED**

**October 26, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother H.R.[1] ("Petitioner") appeals the Circuit Court of Kanawha County's September 14, 2022, order terminating her parental rights to B.R. Upon our review, we determine that a memorandum decision vacating the circuit court's order and remanding for further proceedings consistent with our ruling herein is appropriate in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure.[2]

The main contention against Petitioner in this abuse and neglect matter is that she failed to correct certain issues from a previous abuse and neglect matter. Thus, we begin by examining Petitioner's prior abuse and neglect matter, which this Court addressed in *In re D.W.*, No. 22-0347, 2023 WL 1798622 (W. Va. Feb. 7, 2017)(memorandum decision).

The previous abuse and neglect petition involved two children, D.W. and R.P. The petition provided that R.P. had special medical needs and was failing to thrive in Petitioner's care. This Court described the basis of Petitioner's adjudication in the previous matter as follows:

> [T]he circuit court held an adjudicatory hearing, during which
> [P]etitioner stipulated to "failure to properly feed the infant . .

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015).

[2] Petitioner appears by counsel Edward L. Bullman. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Solicitor General Spencer J. Davenport. Matthew Smith appears as B.R.'s guardian ad litem.

. [R.P.] who had special medical needs." Petitioner's counsel then questioned her about the stipulation, and confirmed that D.W. "is the oldest child. She has not presented with any problems. There are no allegations of neglect against her." Counsel was clear that [P]etitioner was stipulating in regard to R.P. only. On the record, the court simply concluded "I will adjudicate her as an abusing and neglectful parent."

*Id.* at 1798622 at *1.

While there was testimony during the adjudicatory hearing that Petitioner's home lacked adequate heating, this Court in *D.W.* noted that "housing was not an issue for which [P]etitioner was adjudicated." *Id.* at *2. Further, this Court recognized that the circuit court did not make any findings as to how Petitioner

> *abused* either child when the evidence spoke only to *neglect* by her failure to provide R.P. with proper food or medical care. The court also failed to make any specific findings as to how D.W. was either abused or neglected, given that [P]etitioner's stipulation spoke only to her conduct regarding R.P.

*Id.* at *1 (emphasis in original). Further, the DHHR "elected to produce no evidence in support of [P]etitioner's adjudication of D.W. . . . multiple parties at several hearings limited the discussion of [P]etitioner's neglect to R.P. only." *Id.* at *2. Despite the lack of evidence regarding Petitioner's abuse or neglect of D.W., the circuit court terminated Petitioner's parental rights to both D.W. and R.P.

On appeal, this Court vacated the circuit court's ruling as to D.W., finding that no evidence had been presented demonstrating that D.W. had been abused or neglected.[3] *Id.* at *3. The Court affirmed the termination of Petitioner's parental rights to R.P., concluding that there was sufficient evidence demonstrating that Petitioner could not meet R.P.'s special needs and that Petitioner failed to comply with all of the terms of her improvement period. *Id.* at *4. In sum, the prior abuse and neglect matter was based on Petitioner's neglect of R.P., specifically her failure to meet R.P.'s special needs. Petitioner was not adjudicated of having inadequate housing in the prior matter, nor was inadequate housing a basis for termination of her parental rights. With this background in mind, we turn to the allegations contained in the current abuse and neglect petition.

---

[3] During oral argument the Court was informed by counsel that on remand, the DHHR dismissed the petition as to D.W. and Petitioner's parental rights as to that child had been restored.

On May 12, 2022, approximately two weeks after Petitioner gave birth to B.R., the DHHR filed a petition alleging that B.R. was abused and neglected because Petitioner "has not yet rectified the conditions that lead to the filing of the previous petition."[4] The petition then notes that Petitioner "resides in the same dwelling" as she had in the prior case. This is the extent of the detail about the prior case included in the current petition. The petition does not provide that Petitioner's dwelling was inadequate, nor does it reference any testimony, document or ruling from the prior case describing Petitioner's housing situation. Additionally, the petition alleges that Petitioner "has not provided the child [B.R.] with any financial support, whether in kind or in specific monetary amounts during at least some periods of the child['s] life." We emphasize that this petition was filed approximately two weeks after B.R. was born. The petition does not include any specific detail or allegation explaining how Petitioner failed to financially support B.R. in the two weeks between the child's birth and the filing of the petition.

Petitioner waived the preliminary hearing. According to the preliminary hearing order entered by the circuit court, Petitioner was directed to participate in random drug screens. It is undisputed that Petitioner has not had any substance abuse issues either in the current proceeding or in the previous abuse and neglect matter.

The circuit court held an adjudicatory hearing on June 22, 2022. Three witnesses testified at this hearing. First, Tamara Buchanan, a Child Protective Services ("CPS") employee who was the case manager in this matter, was asked about Petitioner's issues from the prior abuse and neglect matter. Ms. Buchanan testified that the issues from the prior case involved inadequate housing and a special needs child's failure to thrive. When asked if Petitioner had taken steps to correct these issues, Ms. Buchanan testified that Petitioner "had corrected the housing situation," noting that "she has electric, water, she has plenty of food, she is still employed." Further, Ms. Buchanan noted that B.R. did not have any special needs that would require Petitioner to receive any special training.

Next, Megan Goffreda, a CPS Supervisor, was called to "make sure the record is clear as to the prior case." Ms. Goffreda recounted the issues from the prior case including R.P.'s failure to thrive. Ms. Goffreda stated that Petitioner was offered classes in the prior case, that she had missed "some appointments" and that there were concerns about "her ability to budget money." Regarding Petitioner's housing situation, Ms. Goffreda testified that "while she does have a residence at this moment, it's not her own. She moves around to different relatives, on the street frequently. Sometimes their utilities are turned off." When asked about Petitioner's source of income, Ms. Goffreda stated that Petitioner "was previously working. I'm not aware if she still maintains that job."

---

[4] At the time the current petition was filed, this Court had not yet entered its memorandum decision in *In re D.W.*

3

Importantly, Ms. Goffreda agreed that her only source of information about Petitioner's current housing situation came from Ms. Buchanan, who testified that Petitioner had corrected her housing issues.[5] While the only current information regarding Petitioner's housing situation came from Ms. Buchanan, the circuit court had the following exchange with Ms. Goffreda:

> Circuit court: And, Ms. Goffreda, she's not maintaining her own home, as you understand it. She's living with a relative?
>
> Ms. Goffreda: Correct.
>
> Circuit Court: And you don't know whether that's something that's going to be available for her long-term with a child or not; do you?
>
> Ms. Goffreda: No, I don't.
>
> Circuit court: And her history would indicate she goes from relative to relative?
>
> Ms. Goffreda: Yes.

We again note that the petition filed against Petitioner in this matter did not allege that Petitioner "moved from relative to relative" or that she "failed to maintain her own home." Further, Petitioner had not been adjudicated of having inadequate housing in the prior abuse and neglect matter.

The final witness at the adjudicatory hearing was Petitioner. She stated that she was living in a house with her grandmother and that they split the cost of the house's utilities. Petitioner testified that she is employed and works at the Morton Travel Plaza. The circuit court asked her how long she had lived in her current home and she stated "about six years." The court then stated, "I'm going to find that incredible. That's way inconsistent with testimony from prior cases."

At the conclusion of her testimony, the circuit court adjudicated her of abuse and neglect. The subsequent adjudicatory order made three brief findings: (1) Petitioner "is an abusing and neglecting parent as defined by the WV code and that [B.R.] is an abused

---

[5] Similarly, Ms. Buchanan offered firsthand testimony that Petitioner was employed. Despite this testimony, Ms. Goffreda stated that she was not aware if Petitioner "still maintains that job."

and neglected child as defined by the WV code;" (2) the court "takes judicial notice that [Petitioner] had her parental rights [to D.W. and R.P.] terminated" in the previous abuse and neglect matter; and (3) "the court finds that [Petitioner's] testimony [is] inconsistent based on prior testimony in previous CPS matters before this [c]court." These are the only findings contained in the adjudicatory order. The order does not provide any specific basis upon which Petitioner has abused or neglected B.R.,[6] nor does it include a finding that Petitioner's home is inadequate.

The circuit court held a disposition hearing approximately two months after the adjudicatory hearing. Ms. Buchanan testified at this hearing and stated that the DHHR was recommending that Petitioner be granted an improvement period. She explained this recommendation as follows:

> I believe [Petitioner] has made some steps toward our goal, which is locating housing; she has applied for several places, and she is just waiting for an answer. She still has gainful employment and is looking for other higher paying jobs. She has stocked up on clothing, some formula, diapers and wipes; and she is doing the best that she can. I believe that she could benefit from some more time and services. As the baby is not a special needs baby, she doesn't require as much services as [the child from the previous case] did.

When asked to describe Petitioner's previous housing issues, Ms. Buchanan stated that "she didn't have adequate electricity and she didn't have much food, but she does now." She also testified that it was in the child's best interest to grant Petitioner an improvement period. Finally, she stated that the DHHR and the guardian ad litem agree that an improvement period is proper and should be granted.[7]

---

[6] Similarly, at the conclusion of the adjudicatory hearing, the circuit court only provided that: "I find that [Petitioner's] testimony is inconsistent internally and certainly inconsistent with the facts of the prior case. . . . [S]he's not being candid about her. . . living situation, indicating that she's been there for six years, which we all clearly know is not true from the prior case."

[7] While the DHHR and the guardian ad litem were in favor of an improvement period, there was a CASA (court appointed special advocate) report submitted to the court that provided:

> Since [Petitioner] received services in the prior case and while she was expecting the birth of this child and was not able to make any improvements in her circumstances, and there seems to be no documented evidence of

Petitioner also testified at the disposition hearing. She stated that she was still employed at the same job but had been interviewing for other, higher paying jobs. She also testified that she has baby supplies, including a crib, bottles, and baby clothing. Finally, Petitioner stated that she was still living with her grandmother but that she was attempting to find a new residence and had been saving money to use as a deposit.

At the conclusion of this hearing, the circuit court denied Petitioner's request for an improvement period and terminated her parental rights. It stated that there "were aggravating circumstances in my view that led to the prior termination. I've not seen any movement or forward movement of any sort that would justify any type of improvement period, much less would justify anything other than termination of parental rights, and that is my determination." In its subsequent disposition order, entered on September 14, 2022, the only specific finding explaining the circuit court's ruling is as follows: "There is no reasonable likelihood that the conditions of abuse and neglect can be corrected in the near future, as [Petitioner] has not made meaningful efforts to rectify the circumstances that led to the filing of the petition in this matter. *Specifically, not having appropriate housing.*" (Emphasis added). Following entry of the circuit court's order, Petitioner filed the instant appeal.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner's main contention is that the circuit court erred by terminating her parental rights based on her failure to correct the conditions of abuse and neglect that existed in the prior abuse and neglect matter.[8]

Upon review, we find that multiple errors were committed in this matter: (1) the allegations in the abuse and neglect petition were not sufficiently specific to inform Petitioner of the precise conduct that formed the basis upon which the petition was being brought; (2) the adjudicatory order does not include any specific findings upon which the

---

additional improvements made since that time, these CASAs recommend the termination of parental rights of the biological mother.

This report's conclusion that "there seems to be no documented evidence of additional improvements" is directly contradicted by the testimony of Ms. Buchanan, who testified that Petitioner had successfully corrected any previous housing issues.

[8] She also argues that the circuit court erred by terminating her parental rights when she was making progress in obtaining her own housing, had employment, successfully complied with services, and demonstrated that she would successfully complete an improvement period. Further, she asserts that the circuit court erred in terminating her parental rights instead of adopting the least restrictive alternative.

6

circuit court based its conclusion that Petitioner "is an abusing and neglecting parent"; and (3) the disposition order terminating Petitioner's parental rights is based on one substantive finding, that Petitioner did not have "appropriate housing." This finding was made despite the fact that Petitioner has never been adjudicated of having "inappropriate housing." Further, this finding was contradicted by the unrebutted testimony of the CPS worker assigned to Petitioner's case, Ms. Buchanan, who testified that Petitioner had corrected any prior housing issues that she may have had. This Court has held that "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes . . . has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process." Syl. Pt. 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2011). As explained below, we find that the process established by our rules has been substantially disregarded or frustrated such that the disposition order must be vacated and the matter remanded for further proceedings consistent with our ruling herein.

**A. Petition**

West Virginia Code § 49-4-601(b) (2019) provides that allegations in an abuse and neglect petition must be set forth with specificity. It provides:

> (b) Contents of Petition. -- The petition shall be verified by the oath of some credible person having knowledge of the facts. *The petition shall allege specific conduct including time and place*, how the conduct comes within the statutory definition of neglect or abuse with references to the statute, any supportive services provided by the department to remedy the alleged circumstances, and the relief sought. Each petition shall name as a party each parent, guardian, custodian, other person standing in loco parentis of or to the child allegedly neglected or abused *and state with specificity* whether each parent, guardian, custodian, or person standing in loco parentis is alleged to have abused or neglected the child.

*Id.* (emphasis added).

This Court has held that "[i]f the allegations of fact in a child neglect petition are sufficiently specific to inform the custodian of the infants of the basis upon which the petition is brought, and thus afford a reasonable opportunity to prepare a rebuttal, the child neglect petition is legally sufficient." Syl. Pt. 1, *State v. Scritchfield*, 167 W. Va. 683, 280 S.E.2d 315 (1981).

In the instant case, the petition provides that Petitioner had a prior termination "from a disposition that took place one month ago" and that Petitioner "has not yet rectified the conditions that lead to the filing of the previous petition. [Petitioner]

7

currently resides in the same dwelling as she did [during the prior case]." The petition does not offer any substantive description of the conduct underlying the prior petition, nor does it state the basis of the adjudication or termination in the prior matter. The only discernable allegation of abuse or neglect contained in the petition that has "not yet [been] rectified" is that Petitioner currently resides in the same house that she did during the prior case. This general description does not satisfy the requirement that the petition "allege specific conduct including time and place, [and a description of] how the conduct comes within the statutory definition of neglect or abuse[.]" W. Va. Code § 49-4-601(b). Further, even giving the DHHR the benefit of the doubt and finding that the petition sufficiently alleges that Petitioner's inappropriate housing was an issue in the prior case that has not yet been corrected, this allegation is problematic because Petitioner was not adjudicated of inappropriate housing in the prior case. This Court specifically provided in *D.W.* that "housing was not an issue for which [P]etitioner was adjudicated." 2023 WL 1798622, at *2. Instead, she was only adjudicated of failing to meet R.P.'s special needs. Because the current matter does not involve a child with special needs, the petition's vague statement that Petitioner has not rectified the conditions from the prior petition, along with the bare statement that she "currently resides in the same dwelling," is insufficient to inform her of the basis upon which this petition is being brought.[9]

Based on the foregoing, we find that the petition's failure to allege specific conduct, including the time and place that the specific conduct occurred, does not comply with West Virginia Code § 49-4-601(b).

## B. Adjudication

The adjudicatory order made three brief, general findings: (1) Petitioner "is an abusing and neglecting parent as defined by the WV code and that [B.R.] is an abused and neglected child as defined by the WV code"; (2) the circuit court took judicial notice that Petitioner's rights to D.W. and R.P. had previously been terminated; and (3) "the court finds that [Petitioner's] testimony [is] inconsistent based on prior testimony in previous CPS matters before this [c]ourt." These are the only substantive findings contained in the adjudicatory order. The order does not provide any specific basis upon which Petitioner has abused or neglected B.R., nor does it include a specific finding that Petitioner's home is inadequate.

West Virginia Code § 49-4-601(i) provides:

---

[9] In addition to the allegation that Petitioner has not rectified the conditions from her prior petition, the petition also alleged that Petitioner "has not provided the child [B.R.] with any financial support, whether in kind or in specific monetary amounts during at least some periods of the child['s] life." The petition does not include any specific detail or allegation explaining how Petitioner failed to financially support B.R. in the two weeks between the child's birth and the filing of the petition.

8

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

This Court has explained that during adjudication, a circuit court must "make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition." Syl. Pt. 3, in part, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023). Further, we have noted that proper adjudication of the issues underlying abuse and neglect is not a "hollow formality." *In re A.P.-1*, 241 W. Va. 688, 695, 827 S.E.2d 830, 837 (2019). Instead, this Court has concluded that adjudicatory errors implicate the due process protections afforded to parents and that proper adjudication is a jurisdictional prerequisite to continuation of the proceedings. *See id.* at 694, 827 S.E.2d at 836 ("The two-stage [adjudicatory and dispositional] process supports the constitutional protections afforded to parents in permanent child removal cases—constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment.") (Internal quotation and citation omitted).

In the present case, the circuit court made no specific findings regarding how B.R. was abused and neglected. The adjudicatory order only: (1) took notice of the prior abuse and neglect petition that involved Petitioner's failure to meet R.P.'s special needs and (2) found that Petitioner's testimony was inconsistent with her testimony in the previous case. The circuit court did not explain how these findings constituted B.R. being abused and neglected.

Based on the foregoing, we find that the adjudicatory order does not comply with West Virginia Code § 49-4-601(i) or with this Court's holding in *B.V.*

**C. Disposition**

The circuit court's disposition order suffers from two main problems. First, the order only includes one substantive finding, that Petitioner did not have "appropriate housing." This finding was made despite the fact that Petitioner has never been adjudicated of having "inappropriate housing." This Court has recognized that "disposition may not ensue absent an adjudication of abuse and/or neglect, [and] termination of parental rights may not be fundamentally premised on conditions of abuse and/or neglect upon which a parent has not been properly adjudicated." *In re K.L.*, ___ W. Va. ___, 885 S.E.2d 595, 604 (2022). Because Petitioner has never been adjudicated of having inappropriate housing, it was error for the circuit court to terminate her parental rights on this basis.

9

Second, even assuming Petitioner had been adjudicated of having inappropriate housing, the only evidence presented regarding Petitioner's current housing situation contradicted the circuit court's finding. Ms. Buchanan, the CPS worker assigned to Petitioner's case, testified that Petitioner had corrected any prior housing issues that she may have had. This Court has held that "[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. Pt. 6, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). There was not "clear, cogent, and convincing proof" presented that Petitioner had inappropriate housing. The *only* testimony presented to the circuit court regarding Petitioner's current housing situation was that she had appropriate housing. Thus, we find that the circuit court committed clear error by concluding that Petitioner had inappropriate housing.

### D. Conclusion

Based upon the foregoing, we conclude that the circuit court erred in terminating Petitioner's parental rights where (1) the allegations in the abuse and neglect petition were not sufficiently specific to inform Petitioner of the precise conduct that formed the basis upon which the petition was being brought; (2) the adjudicatory order did not include any specific findings explaining the circuit court's conclusion that Petitioner "is an abusing and neglecting parent"; and (3) the disposition order terminating Petitioner's parental rights was based on inappropriate housing despite the fact that Petitioner has never been adjudicated on that basis. We therefore vacate the circuit court's September 14, 2022, disposition order terminating Petitioner's parental rights to B.R. and remand for further proceedings consistent with this decision.

Vacated and Remanded with Directions.

ISSUED: October 26, 2023

CONCURRED IN BY:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn