**STATE OF WEST VIRGINIA**

**FILED**
**April 25, 2024**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In re A.B. and M.B.**

**No. 23-58** (Putnam County CC-40-2021-JA-31 and CC-40-2021-JA-32)

**MEMORANDUM DECISION**

Petitioner Father B.B. was adjudicated as an abusive and neglectful parent to his children A.B. and M.B. pursuant to a written stipulation in which petitioner admitted only that he had pled guilty to two counts of gross sexual imposition in Montgomery County, Ohio, four years earlier, and that the victims had been his children.[1]  At adjudication, he moved to dismiss the petition as time barred under West Virginia Code § 52-2-12.  But the Circuit Court of Putnam County determined that the petition was not time-barred under that provision, because petitioner's then-recent attempt to resume contact with the children had rendered the petition timely. Following the hearing, the circuit court entered an adjudicatory order that was simply a copy of petitioner's written stipulation.  At disposition, the court found that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future under West Virginia Code § 49-4-604(d)(3) and terminated petitioner's parental rights to A.B. and M.B.[2]

Upon review, we find termination of petitioner's parental rights to be procedurally infirm because the circuit court's adjudicatory order rests on petitioner's stipulation that does not conform with the requirements of Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings.  The adjudicatory order also contains no findings that *at the time of the petition's filing*, the health and welfare of the children were threatened by petitioner's sexual assault conviction four years earlier.  Accordingly, we vacate the circuit court's orders adjudicating petitioner and terminating petitioner's parental rights and remand for further proceedings.  This

---

[1] We use initials to identify the parties in abuse and neglect cases. *See* W. Va. R. App. Proc. 40(e).

[2] Petitioner appears by counsel Shawn D. Bayliss.  The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey, Principal Deputy Solicitor General Michael R. Williams, and Assistant Attorney General Heather L. Olcott.  Lisa A. Estes serves as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Services was terminated.  It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services.  *See* W. Va. Code § 5f-1-2.  For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

case satisfies the "limited-circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for disposition in a memorandum decision.[3]

In July 2017, petitioner pled guilty to two counts of gross sexual imposition in Montgomery County, Ohio after the mother discovered that petitioner sexually abused A.B. and the child's half-sibling.[4] As part of his plea, petitioner was barred from contacting A.B. and the other child for five years. During that time, the mother moved with the children to Putnam County, West Virginia, and the Family Court of Putnam County entered a divorce order that granted sole parenting responsibility to the mother and precluded petitioner from having any contact with the children.

In April 2021, petitioner requested contact with A.B. and petitioner's other biological child M.B., in the Family Court of Putnam County,[5] asserting that the Ohio court had changed the terms of this prohibition in March 2021 to allow contact with the children in a therapeutic setting.[6] As a result, the mother filed a petition in the Circuit Court of Putnam County alleging that petitioner is an abusive and neglectful parent based on petitioner's sexual assault conviction and abandonment, pursuant to W. Va. Code § 48-22-306.[7] Based on that petition, the circuit court found an imminent danger to the physical well-being of the children and ordered DHS to investigate the matter.

---

[3] *See* W. Va. R. App. P. 21.

[4] AB's half sibling lives in the mother's home with A.B. but is not at issue in this appeal.

[5] In his brief, petitioner asserts that he requested contact with the children by filing a Motion for Reunification Counseling in the Family Court of Putnam County.

[6] Petitioner's assertion is not necessarily reflected in the record before this Court. The Common Pleas Court of Montgomery County, Ohio entered an order on March 3, 2021 stating that "[a]fter careful consideration, this Court will terminate [petitioner's] community control sanctions after he has been supervised for four years (in July 2021), provided that 1) [petitioner] is still compliant with [his services] at that time and 2) his probation officer agrees with the termination of [the sanctions]."

Included in the record is a letter from petitioner's psychologist recommending he have contact with his biological children "through a gradual step process in which he works with a therapist, trained and knowledgeable in family reunification after the occurrence of an incest trauma." Confusingly, the psychologist simultaneously recommended against petitioner's contact with other children less than eighteen years old.

[7] To support her abandonment allegation the mother asserted that "[petitioner] has not had any contact with either child in over four [4] years. [Petitioner] has provided no emotional, and or fatherly support for the children. Further, other than mandated child support, [petitioner] has failed to provide any financial support for the children, including but not limited to vacations, holidays, Christmas, birthdays, etc."

2

At the June 2021 adjudicatory hearing, petitioner moved to dismiss the petition as time barred by the two-year limitations period under West Virginia Code § 52-2-12.[8] He argued that pursuant to § 52-2-12, the filing of a petition in 2021 based on conduct that had occurred more than two years earlier was prohibited, and that the conduct here (petitioner's sexual assault of the children and the resulting convictions) had occurred in 2016 and 2017. The court denied petitioner's motion, reasoning that the relevant conduct was petitioner's recent attempt to resume contact with the children, and not petitioner's criminal conduct in Ohio.

After that, petitioner entered a written stipulation admitting that he had pled guilty to two counts of gross sexual imposition in Ohio, that his children were his victims, and that, as a result, the children were abused and/or neglected children under West Virginia Code § 49-1-201.[9] Even though the circuit court had expressed its view that the relevant conduct was petitioner's recent attempt to resume contact with the children, the resulting adjudicatory order contained only petitioner's written stipulation. The court terminated petitioner's parental rights to the children following a dispositional hearing in May 2022. Before this Court, petitioner assigns as error the circuit court's failure to dismiss the action as time-barred under West Virginia Code § 55-2-12.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo.[10] As a preliminary matter, we reject petitioner's contention that because neither West Virginia Code § 49-4-601 nor the Rules of Procedure for Child Abuse and Neglect Proceedings contain a specific statute of limitations for the filing of an abuse and neglect petition, the applicable time frame is two years as set forth in West Virginia Code § 55-2-12.

When addressing matters of statutory interpretation, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must

---

[8] West Virginia Code § 55-2-12 sets forth the following statute of limitations for personal actions:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

[9] The written stipulation did not include a "statement of respondent's problems or deficiencies to be addressed at the final disposition" as required under Rule 26(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings.

[10] *See* Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

3

prevail and further inquiry is foreclosed."[11]    Applying the plain language of § 55-2-12, it is clear that it prescribes the statute of limitations for damage to property,[12] damages for personal injuries,[13] and "for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."[14]  It does not purport to apply to abuse and neglect civil actions.

Still, petitioner relies on *Merrill v. Department of Health and Human Resources*,[15] to support his argument that the limitations period set forth in § 55-12-2 applies to abuse and neglect proceedings.  In *Merrill*, two individuals filed suit against DHHR after having reported sexual abuse by their father to DHHR, which took no action for four years.[16]  Although the children were initially removed from the home, they were later returned to the parents and the father's sexual abuse of one of the children resumed.  The DHHR case was closed.[17]  Fifteen years later, well after the children had reached the biological age of maturity, they filed a civil action against DHHR for psychological and physical injuries they suffered as a result of DHHR's failure to protect them from their father's repeated sexual abuse.  The circuit court granted DHHR's motion for summary judgment on the ground that the claims were barred by the two year statute of limitations set forth in West Virginia Code § 55-2-12.[18]

Petitioner's reliance on *Merrill*, is misplaced.  *Merrill* involved a personal injury action to which West Virginia Code § 55-2-12 clearly applied.  In contrast, this case—an abuse and neglect matter—does not fall within the purview of West Virginia Code § 55-2-12, as it is neither an action for "damage to property," "damages for personal injuries," nor "any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."[19]  So, the period of limitations provided in West Virginia Code § 55-2-12 does not apply.

---

[11] *Appalachian Power Co. v. State Tax Dep't*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995).

[12] W. Va. Code § 55-2-12(a).

[13]  W. Va. Code § 55-2-12(b).

[14] W. Va. Code § 55-2-12(c).

[15] 219 W. Va. 151, 632 S.E.2d 307 (2006).

[16] *Id*. at 154, 632 S.E.2d at 310.

[17] *Id*.

[18] *Id*. at 161, 632 S.E.2d at 317.

[19] W. Va. Code § 55-2-12.

We now turn to requirements of the adjudicatory process as set forth in West Virginia Code § 49-4-601(i). "In child abuse and neglect cases, the adjudicatory process is a jurisdictional prerequisite."[20] And at the adjudicatory stage, West Virginia Code § 49-4-601(i) directs the circuit court to make findings of abuse and neglect based on conditions existing *at the time the petition is filed*:

> **Findings of the court.** – Where relevant, the court shall consider the efforts of the department to remedy the alleged circumstances. At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. *The findings must be based upon conditions existing at the time of the filing of the petition* and proven by clear and convincing evidence.[21]

We have held that "[f]or a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an 'abused child' or a 'neglected child' . . . based upon the conditions existing at the time of the filing of the abuse and neglect petition."[22] [U]nder West Virginia Code § 49-1-201 (2018), an abused child means,

> (1) A child whose health or welfare is being harmed or threatened by:
>
> (A) A parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment;
>
> (B) Sexual abuse or sexual exploitation;
>
> (C) The sale or attempted sale of a child by a parent, guardian, or custodian in violation of § 61-2-14h of this code;
>
> (D) Domestic violence as defined in § 48-27-202 of this code; or

---

[20] *In re Z.S.-1 and Z.S.-2*, 249 W. Va. 14, 893 S.E.2d 621, 627 (2023).

[21] W. Va. Code § 49-4-601(i) (emphasis added).

[22] Syl. Pt. 8, in part, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022).

5

(E) Human trafficking or attempted human trafficking, in violation of § 61-14-2 of this code.

(2) A child conceived as a result of sexual assault, as that term is defined in this section, or as a result of the violation of a criminal law of another jurisdiction which has the same essential elements: Provided, That no victim of sexual assault may be determined to be an abusive parent, as that term is defined in this section, based upon being a victim of sexual assault.

....

"Neglected child" means a child:

(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian;

(B) Who is presently without necessary food, clothing, shelter, medical care, education, or supervision because of the disappearance or absence of the child's parent or custodian; or

(C) "Neglected child" does not mean a child whose education is conducted within the provisions of § 18-8-1 et seq. of this code.[23]

Here, petitioner's stipulated adjudication admitted that he had pled guilty to two counts of gross sexual imposition in Ohio, and that, as a result, the children were abused and/or neglected children under West Virginia Code § 49-1-201. At the time the mother filed the abuse and neglect petition, the children had already been living with the mother in West Virginia and had not had any contact with petitioner in at least four years. The circuit court's order contains no findings that *at the time of the petition's filing*, the health and welfare of the children were threatened in any way by petitioner's sexual assault conviction four years earlier. Absent findings that the subject children meet the statutory definitions of "abused" or "neglected" children, we have held that the circuit court lacks jurisdiction to proceed to disposition: "Stated even more plainly, our statutes, cases, and rules instruct that a circuit court may not terminate parental rights at a § 49-4-604 disposition hearing without first finding that the parent abused or neglected the child in question at a § 49-4-601 adjudicatory hearing."[24] Because petitioner's stipulation to a

---

[23] W. Va. Code § 49-4-201.

[24] *In re A.P.-1,* 241 W. Va. 688, 693, 827 S.E.2d 830, 835 (2019).

6

conviction involving the subject children four years prior cannot, standing alone, meet those statutory definitions, we find that the adjudicatory order is deficient and deprived the Circuit Court of Putnam County of jurisdiction over petitioner's disposition.

Petitioner's stipulated adjudication was also deficient under Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which directs that a stipulation contain both "(1) [a]greed upon facts supporting court involvement regarding the respondent['s] problems, conduct, or condition" and "(2) [a] statement of respondent's problems or deficiencies to be addressed at the final disposition."[25] In re Z.S.-1 and Z.S.-2, we vacated and remanded an order terminating parental rights based, in part, on an inadequate stipulation to adjudication. We held that both elements of Rule 26(a) must be satisfied for a circuit court to properly adjudicate a parent pursuant to a stipulation.[26]

Petitioner's stipulated adjudication included only a stipulation to his 2017 guilty plea to gross sexual imposition in Ohio. Although his stipulation acknowledges his abusive history, it does not explain how that history relates to his status as a respondent parent in the present case. The written stipulation further falls short of our requirements under Z.S-1 by omitting any problems or deficiencies that would support termination of petitioner's parental rights at disposition, which, as we held in that case "helps to avoid discrepancies between adjudicatory and dispositional rulings."[27]

Improper adjudication "deprives the court of jurisdiction to proceed to the dispositional phase of an abuse and neglect proceeding and is a clear violation of the established procedures governing abuse and neglect proceedings."[28] The circuit court's adjudication of petitioner was improper because of the jurisdictional requisite that the finding of abuse and neglect be based on conditions exiting at the time of the petition's filing *and* under the requirements for written stipulations under Rule 26(a). Accordingly, it is clear that the circuit court's adjudication of petitioner was insufficient, and the court lacked jurisdiction to terminate his parental rights to the children.[29]

---

[25] W. Va. R.P. Child Abuse & Neglect Proc. 26(a).

[26] *In re Z.S.-1*, 249 W. Va. at 14, 893 S.E.2d at 621.

[27] *Id*.

[28] *Id*. (referencing *In re A.P.-1*, 241 W. Va. 688, 693, 827 S.E.2d 830, 835 (2019)).

[29] Although we hold that the Circuit Court of Putnam County lacked jurisdiction to terminate petitioner's parental rights in this case, we acknowledge the egregious conduct of which petitioner was convicted in Ohio. Still, the written stipulation fell short of our statutory requirements, and "[d]efects in adjudication implicate the due process protections provided to parents subject to these sensitive proceedings." *In re C.L.*, 249 W. Va. 95, 894 S.E.2d 877, 885 (2023).

For the foregoing reasons, we vacate the July 8, 2021, adjudicatory order and remand this matter to the circuit court for proceedings consistent with this decision, including but not limited to the entry of an order setting out the requisite findings as to whether A.B. and M.B. met the statutory definitions of an abused or neglected child under West Virginia Code § 49-4-201 and our holding in *Z.S.-1*.[30]  The clerk is hereby directed to issue the mandate contemporaneously with this decision.

Vacated and Remanded.

ISSUED: April 25, 2024

CONCURRED IN BY:

Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

CONCURRING IN PART; DISSENTING IN PART; AND WRITING SEPARATELY:

Chief Justice Tim Armstead

---

[30] 249 W. Va. 14, 893 S.E.2d 621.

Armstead, C.J., concurring, in part, dissenting, in part.

While I agree with the majority that West Virginia Code § 52-2-12 does not extend to abuse and neglect proceedings, I disagree with the conclusion that the circuit court erred when it accepted petitioner's stipulated adjudication and therefore lacked jurisdiction to terminate petitioner's parental rights. I take particular issue with the majority's conclusion that "[t]he circuit court's order contains no findings that *at the time of the petition's filing*, the health and welfare of the children were threatened in any way by petitioner's sexual assault conviction four years earlier." This finding disregards the fact that the abuse for which Petitioner was convicted was actually committed against his daughter A.B. It is difficult to imagine how exposing a child to a parent who was convicted of sexually abusing her only four years earlier does not, by common-sense definition, "threaten" the health and welfare of the abused child. The effects of sexual abuse do not end for victims when the perpetrator pleads guilty. The record is fraught with examples of the lasting psychological impact petitioner's actions had on A.B. and M.B. Petitioner's stipulation to his prior conviction of sexual imposition against his daughter A.B. and his stepdaughter while his son M.B. was in the home demonstrate his acknowledgement that his sexual abuse continued to harm A.B. and M.B. despite the passage of time. His stipulation established abuse sufficient to support adjudication for A.B. and M.B., and the children's best interests support termination of petitioner's parental rights in this case. For these reasons, I would affirm the circuit court order terminating petitioner's parental rights to A.B. and M.B.

The circuit court afforded petitioner all required due process in the proceedings below. *See* W. Va. Code § 49-4-601(h) ("In any proceeding pursuant to [an abuse and neglect petition], the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses . . . ."). This due process must be balanced with the well-established best-interest standard which guides these cases: "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 3, *in part*, *In re Timber M.*, 231 W. Va. 44, 743 S.E.2d 352, 355 (2013) (citations omitted). The court explained its consideration of this balance on the record when it conducted a thorough colloquy regarding petitioner's stipulation while also recognizing the impact petitioner's conduct could have on the children. The court stated, "We're talking about a nine-year-old girl, forcing her to be with the person that is convicted of sexually abusing her. And [her] best interest is to follow through this action and follow through with adjudication today."

During the colloquy, petitioner stated that he freely, voluntarily, and in the presence of counsel stipulated to the adjudication. He affirmed that he had read and considered all of the information in the stipulation, and that he understood he could not be forced to enter into the agreement. He stated that he understood that he had the right to an adjudicatory hearing, but he chose to forgo the hearing and enter the stipulated agreement. Finally, petitioner affirmed his understanding that his stipulation would result in his adjudication as an abusive and neglectful parent to A.B. and M.B. During oral argument before this Court, petitioner's counsel was asked

9

whether he deemed petitioner's stipulation insufficient. He replied, "no I don't . . . I think [the stipulation] was made knowingly, intelligently, and that the waiver in terms of the adjudication aspect of . . . the stipulation was proper."

Nevertheless, the majority *sua sponte* rejects the petitioner's valid stipulation to adjudication by inextricably concluding that abusive conditions did not exist at the time of the petition filing and ignoring the lasting trauma the petitioner caused to his children. Given their sensitive nature, abuse and neglect cases "must be recognized as being among the highest priority for the [C]ourt's attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In re Carlita B.,* 185 W.Va. 613, 615, 408 S.E.2d 365, 367 (1991). Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires a stipulation to contain both facts justifying court involvement in the respondent's problems, conduct, or condition, and a statement of the respondent's problems or deficiencies to be addressed at final disposition. *See* W. Va. R. P. Child Abuse and Neglect Proc. 26(a). Petitioner agreed to stipulate to his prior conviction, indicating that he understood how his conduct justified the court's intervention. Similarly, his decision to stipulate to the prior conviction acknowledged an ongoing deficiency, that he sexually abused A.B. Because M.B. resided in the home where petitioner admitted to sexually abusing M.B.'s sisters, abuse can be imputed to him. *See* Syl. Pt. 2, *In re Christina L.,* 194 W. Va. 446, 460 S.E.2d 692 (1995) ("Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W. Va. Code, 49–1–3(a) (1994).").

Furthermore, the majority's reliance on *In re Z.S.-1*, 249 W. Va. 14, 893 S.E.2d 621 (2023) is misguided. In *Z.S.-1*, we found that the circuit court incorrectly adjudicated the parents as abusive based on a deficient stipulation under Rule 26(a). In that case, the parents stipulated that their child sustained injuries, not that they caused the injuries. By contrast, petitioner here admitted to his abusive conduct when he pled guilty to two counts of gross sexual imposition against two children, including his daughter A.B. Because of the devastating and lasting effects petitioner's conduct has had on A.B., his stipulation that he was convicted of sexual crimes against A.B. and another child certainly meet the requirements of Rule 26(a).

For these reasons, I respectfully dissent as to the majority's conclusion that the circuit court lacked jurisdiction to terminate petitioner's parental rights and, thus, erred when it accepted petitioner's stipulated adjudication. Accordingly, I would affirm the termination of petitioner's parental rights to A.B. and M.B.