**FILED**

**March 1, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

*In re* **D.B., H.B., P.B., R.B.-1, R.B.-2, R.B.-3, and L.B.**

**Nos. 22-831 & 22-867** (Wood County CC-54-2021-JA-131, CC-54-2021-JA-132, CC-54-2021-JA-133, CC-54-2021-JA-134, CC-54-2021-JA-135, CC-54-2021-JA-136, and CC-54-2021-JA-215)

### MEMORANDUM DECISION

In these consolidated abuse and neglect appeals,[1] petitioner father R.B.-4[2] ("Father") and petitioner mother A.B. ("Mother") (collectively "petitioners") each challenge the October 27, 2022, dispositional order entered by the Circuit Court of Wood County, terminating their parental rights to their children D.B., H.B., P.B., R.B.-1, R.B.-2, R.B.-3, and L.B. The West Virginia Department of Human Services ("DHS")[3] and the children's guardian ad litem ("GAL") filed briefs in support of the circuit court's order.[4]

After considering the parties' written and oral arguments, the appendix record, and the applicable law, this Court concludes that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for resolution in a memorandum; accordingly, a memorandum decision is appropriate affirming the circuit court's dispositional order as to Father, vacating the court's dispositional order as to Mother, and remanding the matter for further proceedings consistent with this decision.

---

[1] By order entered October 23, 2023, the Court consolidated Father's and Mother's appeals.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because three of the children and petitioner share the same initials, we will refer to them as R.B.-1, R.B.-2, R.B.-3, and R.B.-4, respectively.

[3] Pursuant to West Virginia Code section 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect cases, the agency is now the Department of Human Services ("DHS").

[4] Father appears by counsel Eric K. Powell. Mother appears by counsel Courtney L. Ahlborn. The DHS appears by counsel Attorney General Patrick Morrisey and Assistant Solicitor General Caleb A. Seckman. Counsel Jessica E. Myers appears as the children's guardian ad litem.

1

On June 14, 2021, the DHS filed an abuse and neglect petition[5] alleging that petitioners provided a home with deplorable living conditions, specifically: filth, rotting food, cockroaches running throughout the home, including inside the refrigerator, human feces all over a wall, trash, dirty diapers, and insufficient sleeping conditions for the children (mattresses with no bedding); that petitioners locked the children in their bedroom at night using a "ratchet strap" on the door; and that petitioners screwed the upstairs bathroom door shut because the children were letting the water run. The petition also included allegations of domestic violence, which were related to a prior 2017 abuse and neglect proceeding, and alcohol abuse in the home.

On July 19, 2021, the DHS filed an amended petition, adding additional allegations that Father used inappropriate physical discipline on one of the children, which the child had disclosed during a Child Advocacy Center ("CAC") interview. The DHS also alleged that petitioners had failed to provide adequate supervision for their children, resulting in another child having to take on a parenting role and providing care to her siblings, including making them peanut butter and jelly sandwiches, ramen noodles, eggs, and cereal.

At the July 27, 2021, adjudicatory hearing, Father stipulated to failing to provide safe, adequate housing for his children "as evidenced by the deplorable conditions inside the home," neglecting them by locking them inside a bedroom using a ratchet strap, neglecting the children's hygienic needs, and abusing at least one child by using "excessive, inappropriate physical discipline." Mother stipulated to failing to provide safe, adequate housing for her children. She further stipulated that she "neglected the children by locking them inside a bedroom with a ratchet strap" and neglected the children's hygienic needs such that the children were "extremely dirty to the point of having a foul odor." Based on petitioners' respective stipulations, the circuit court adjudicated Mother as a neglectful parent, and Father as an abusive and neglectful parent. Petitioners moved for post-adjudicatory improvement periods.

Following the birth of L.B. in October, 2021, the DHS filed a second amended petition, alleging: 1) that there had been a prior abuse and neglect proceeding that ultimately resulted in the children being returned to petitioners; 2) that the DHS "adopts and alleges all allegations contained in the initial petition and amended petition[]" (discussed *supra*); 3) that petitioners had stipulated to allegations in the initial and amended petitions, including failing to provide safe, adequate housing "as evidenced by deplorable conditions inside the home," neglecting their children by locking them inside a bedroom using a ratchet strap, and neglecting the hygienic needs of the children; 4) that Father stipulated to abusing one of the children by using excessive, inappropriate discipline on the child; 5) that Mother had given birth to L.B. during the pendency of the abuse and neglect proceeding in regard to the older six children; and 6) that petitioners had not yet

---

[5] Petitioners were involved in a prior abuse and neglect proceeding in 2017. In September, 2017, Father was charged with a felony count of strangulation; he pled guilty to a misdemeanor charge of domestic battery. An abuse and neglect petition was filed in connection with the domestic violence incident. Mother was granted a pre-adjudicatory improvement period; Father was granted a post-adjudicatory improvement period. Petitioners completed their respective improvement periods and the abuse and neglect proceeding was dismissed by court order entered on August 17, 2018.

corrected the circumstances of abuse and neglect as to the older six children and "[i]f left in . . . [petitioners'] custody, the child . . . [L.B.] would be subject to the same abuse and neglect as her siblings." Significantly, at the time the second amended petition was filed, the circuit court had not yet ruled upon petitioners' pending motions for post-adjudicatory improvement periods.

Petitioners waived their right to a preliminary hearing on the second amended petition. After an October 26, 2021, hearing, the circuit court granted both petitioners' respective motions for post-adjudicatory improvement periods.

Thereafter, on November 29, 2021, an adjudicatory hearing was held in regard to the second amended petition. Mother testified that at the time the infant child was born, neither she nor Father had completed all of the services in regard to the pending abuse and neglect case. Mother agreed that the services were "designed to correct the abuse and neglect that led to the initial petition in this matter." Mother further recognized that as of the date of this adjudicatory hearing she was just entering into an improvement period geared toward correcting the conditions that led to the filing of the initial petition. The court also was asked by the DHS to take judicial notice of petitioners' prior stipulations as well as "all of the evidence presented at all prior hearings including dispositional hearings." The court then addressed the terms and conditions of petitioners' respective post-adjudicatory improvement periods.[6] By order entered December 7, 2021, the court ordered six-month improvement periods for petitioners, which were to begin "as of today's date [December 7, 2021]."[7] By separate order also entered December 7, 2021, the court adjudicated both petitioners as neglectful parents in regard to L.B. In the adjudicatory order, the circuit court found that L.B. "would be subjected to the same conditions that existed with regard to the other children that have been previously adjudicated as neglected children and that the [] parents have not corrected the conditions that led to the filing of the Initial Petition."

In July, 2022, during the post-adjudicatory improvement periods, two of the children, R.B.-1 and R.B.-2, were returned to petitioners' care on a trial basis. On July 7, 2022, shortly after these two children were placed backed into petitioners' care, a domestic violence incident occurred in the home, resulting in one of the children calling the police. A Wood County Sheriff's Deputy responded to the call. The officer encountered Mother in her car with the two children as they were driving away from the family home. The officer reported that Mother told him Father had punched her in the jaw, although the officer did not observe any injury. Mother filed a domestic violence petition in which she swore under oath that Father "punched me in the face. I . . . took

---

[6] There were seventeen terms and conditions for Father's improvement period, including being evaluated for BIPPS, which is a "battering intervention and prevention program." If Father was ineligible for BIPPs "due to prior completion of the program" then he was to complete the ADAMS program, another program used by the DHS and the circuit court to address domestic violence issues, which program Father did complete. Mother's improvement period also had seventeen terms and conditions, including participating in the EVE program, which is also used for domestic violence issues and which she completed.

[7] Petitioners complied with the terms of their respective improvement periods and were granted ninety-day extensions beginning on May 31, 2022.

the 2 children I had & left in fear of our life." A protective order was issued. Both children confirmed the domestic violence incident during CAC interviews.

The day after the domestic violence incident, a service provider went to petitioners' home and found the home to be cluttered and unclean. The service provider also reported that Father's eyes were dilated and that he smelled of alcohol. The service provider reported her observations to Child Protective Services ("CPS"), which resulted in a CPS worker also visiting the home that day to perform a safety check. The CPS worker did not observe any cause to remove the children from the home. Significantly, neither Father nor Mother informed either the service provider or the CPS worker of the domestic violence incident that had occurred the night before.

A CASA ("Court Appointed Special Advocate") report dated July 13, 2022, indicates that Mother had reported to CASA, and the children had reported to their providers and foster parents, that Father had punched Mother in the face. The CASA report further provides that "CASA is not in favor of continuing . . . [petitioners'] improvement periods and recommends setting this matter for disposition." This recommendation was based on CASA's finding that it was

> alarming to CASA that domestic violence is being reported after services have been in place to address said issues and while some of the children have been returned to . . . [petitioners'] care, and this information not being provided to the MDT [("multidisciplinary team")], but only after CASA spoke with providers and foster.

On July 15, 2022, the circuit court held a review hearing in regard to petitioners' post-adjudicatory improvement periods, and by order entered July 22, 2022, the court granted the DHS's motion to require that all visitation by petitioners with their children be supervised until a further hearing "due to the alleged domestic violence incident"[8] in petitioners' home. The court then set the matter for a dispositional hearing.

On September 9, 2022, the circuit court held a dispositional hearing. The court heard testimony from a case manager for Necco, which is a service provider, a CPS worker, and petitioners. The case manager testified that she visited petitioners' home on July 8, 2022, the day after the domestic violence incident. She stated that when she arrived, Father, the infant L.B., P.B., D.B., R.B.-3, and H.B., were in the home on visits. Mother, R.B.-1, and R.B.-2 were not present. Father first told her that Mother, R.B.-1, and R.B.-2 had gone to the store and then Father said that "he wasn't sure where she was at." During the visit, Father did not tell her about the domestic violence incident that had occurred the previous night. The case manager also testified that she observed conditions in the home – dirty dishes from the prior night, a sink full of dishes, clothes all over the house in each room, and unmade beds – which caused her to be concerned. She communicated her concerns with the CPS worker. The case manager also testified that she

---

[8] The DHS did not file amended petitions to include the July 2022 domestic violence incident.

observed that Father was not wearing his glasses and "[w]hen I got close to him his pupils were dilated. I got a whiff of alcohol."

The CPS worker testified that she was instructed to go to petitioners' home as "[i]t was my understanding that the Necco worker had concerns that [Father] had been drinking and the home conditions were not adequate for the children to be in the home." She stated that Mother was present in the home when she arrived. Mother told her that Father had gone to pick up medication. The CPS worker testified that she was in the home about twenty minutes and that everything was going well; she did not observe anything that rose to the level of an "immediate safety concern" to the children. The CPS worker stated that Mother did not advise her of any incident that had occurred the day before. Father returned home while the CPS worker was still in the home. Father told her that he had been ill because he had been out of his insulin medication for some time and "that was his explanation for his behavior that the Necco worker had concerns for." Father did not tell the CPS worker about any incident that had occurred the night before and he denied any alcohol use or any problems.

Mother testified regarding the July 7, 2022, incident when only two of the children, R.B.-1 and R.B.-2, were in the home. Mother stated that a verbal argument occurred because the children wanted to watch a movie but the VHS tape rewinder malfunctioned; Father got upset because the rewinder was not working "[s]o he was just raising his voice that he was upset about it." Mother testified that she took the two children into petitioners' bedroom and turned on cartoons so that they would not hear their parents yelling at each other. Mother testified that Father went into the bedroom and she brought the children back into the living room "because he was saying a few harsh words." Mother said she asked Father to leave but he refused. Mother stated that she took the children and left the home for the night. She also testified that she did not "remember it becoming physical, but I could be wrong because I had a lot of stuff going at that time. I can't say for sure that, yes, it did or, no, it didn't." Mother did not remember telling the CASA worker that Father punched her in the face, and she denied that it had occurred. However, Mother also testified that she told one child to call the police because Father would not leave after being asking to do so several times. She stated that her daughter told the police that Mother had blood on her face after Father punched her, but Mother repeatedly denied that any physical altercation between her and Father had occurred. She admitted that the children were disturbed by the incident. She also admitted that she did not tell the Necco worker or CPS about the incident. She said that she left with the children as a result of the incident because she believed the home was unsafe for them; however, she thought the home was safe when she returned with the children the next day. She also admitted to filing for a domestic violence protective order ("DVPO") and swearing in the petition that Father had punched her.[9]

Father also testified that he got "agitated" about the tape recorder and that he should not have raised his voice, but he denied having punched Mother. However, he stated that it was not a safe environment for his children on the evening of July 7. He testified that it never occurred to him to inform the Necco worker or CPS about the incident. Father also denied drinking on the night of July 7 and on July 8. He testified that he was adjudicated for domestic violence in the

---

[9] The DVPO was later dismissed when Mother failed to appear at the final hearing.

prior 2017 case and that he had participated in the ADAMS program through Harmony Mental Health as part of his improvement period in this case.

In its October 27, 2022, dispositional order, the circuit court found that petitioners

> were involved in a prior abuse and neglect case with the main issue being domestic violence. In that prior case, [Father] was granted a post-adjudicatory improvement period and [Mother] was granted a pre-adjudicatory improvement period. Both [petitioners] successfully completed their respective improvement period, and the children were returned to them.
>
> The Court FINDS that since that time, it appears that [Father's] anger issues, domestic violence, and physical abuse of [one of the children] prior to the filing of the Petition have continued to escalate into domestic violence in the home toward [Mother] as well. The Court further FINDS that as part of this improvement period and the prior improvement period [Father] completed the ADAM[S] program and the BIPPS program, which are the two main programs that the Department and the Court use[] to address domestic violence issues and yet on July 7, 2022, [Father] resorted to domestic violence in the home against [Mother].

Because both petitioners denied the allegations of domestic violence during the hearing, the court found Mother's testimony to be not credible "as she is either lying about the domestic violence now or lied about it at the time of the swearing of the [domestic violence] petition." The court noted that the police report following the incident included Mother's admission that Father punched her in the face and Mother swore in a domestic violence protection petition that Father punched her in the face. Additionally, the court found that the forensic interviews of two of the children "shed light into the continued domestic violence." One child reported that Father struck Mother in the face "very hard causing her a bloody nose" and the other child "talked about [Father's] aggression." The court concluded that petitioners had not responded to or followed through with a reasonable family case plan or other rehabilitative efforts designed to reduce or prevent the abuse or neglect of the children. Thus, it determined that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future and that it was necessary to terminate petitioners' parental rights as to all of the children. It is from this dispositional order that petitioners appeal.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact under a clearly erroneous standard and its conclusions of law are subject to de novo review. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Further, "[w]hether a court has subject matter jurisdiction over an issue is a question of law[.]" *Snider v. Snider*, 209 W. Va. 771, 777, 551 S.E.2d 693, 699 (2001).

At the outset, we must address the court's termination of Mother's parental rights based on allegations of abuse or domestic violence, as Mother was never adjudicated on any of these

allegations and, thus, the circuit court lacked subject matter jurisdiction to proceed to disposition on these grounds.[10] In regard to the role adjudication plays in abuse and neglect cases, we most recently reiterated in *In re Z.S.-1*, 249 W. Va. 14, 893 S.E.2d 621 (2023), that

> [w]ithout proper adjudications of each child identified in the petition as abused and/or neglected children and each of the parents named as respondents to the petition as abusing and/or neglectful parents, the circuit court cannot proceed to the dispositional phase of the proceedings. *See, e.g., In re A.P.-1*, 241 W. Va. 688, 693, 827 S.E.2d 830, 835 (2019) ("[O]ur statutes, cases, and rules instruct that a circuit court may not terminate parental rights at a § 49-4-604 disposition hearing without first finding that the parent abused or neglected the child in question at a § 49-4-601 adjudicatory hearing." (footnote omitted)).

*In re Z.S.-1*, 249 W. Va. at ___, 893 S.E.2d at 627-28; *see also* Syl. Pt. 8, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022) ("For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an 'abused child' or a 'neglected child' as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code section 49-4-601(i) (2019), a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition."); *see also In re C.L.*, 249 W. Va. 95, 894 S.E.2d 877 (2023) (discussing deficient adjudicatory order warranting vacation of dispositional order).

We have previously found that

> [f]ailure to render a proper adjudication deprives the court of jurisdiction to proceed to the dispositional phase of an abuse and neglect proceeding and is a clear violation of the established procedures governing abuse and neglect proceedings. *See A.P.-1*, 241 W. Va. at 693, 827 S.E.2d at 835.

> > Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

---

[10] The same error is not present in Father's case because he stipulated to using excessive physical discipline against one of his children, was adjudicated as being an abusing parent, and had completed both the ADAMS and the BIPPS programs.

Syl. pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

*In re Z.S.-1*, 249 W. Va. at ___, 893 S.E.2d at 631.

Here, Mother was never adjudicated as being an abusing parent because the DHS never alleged that she engaged in conduct falling within the statutory definition of abuse. *See* W. Va. Code § 49-1-201. The only allegations against Mother were focused on her neglect of the children. *See id*. The lack of an adjudication in regard to abuse or domestic violence in this case prevented the circuit court from proceeding to disposition for domestic violence or abuse as to Mother. Therefore, termination of Mother's parental rights to the children based on domestic violence was in error, and the court's dispositional order of October 27, 2022, must be vacated *only* as to Mother's disposition and the case remanded for further proceedings consistent with this decision.[11]

Turning to Father's assigned errors, he first argues that the circuit court erred in adjudicating him as a neglectful or abusive parent in regard to the infant, L.B. Father contends that there is no derivative abuse or neglect as to this child because the child never lived in the home where another child was abused or neglected, and there were no allegations of any act of neglect or abuse by Father against the infant.[12] This argument, however, ignores the fact that the second amended petition contained the specific allegation that this infant would be residing in the same home as the other children and subject to the same conditions of abuse and neglect that existed for those children, and further that the circumstances set forth in both the original petition and the first amended petition had not been corrected as neither Father nor Mother had been granted an improvement period at the time the second amended petition was filed. Additionally, Father had already stipulated to, and been adjudicated for, both abuse and neglect in regard to the other children. Finally, Father's argument also disregards the fact that L.B. clearly met the statutory definition of "neglected child" because she was threatened by Father's failure to provide the child with suitable living conditions. Indeed, "neglected child" is defined as a child "[w]hose physical or mental health is harmed *or threatened by a present refusal, failure or inability of the child's parent*, guardian, or custodian to supply the child with *necessary food, clothing, shelter, supervision*, medical care, or education[.]" *See id*. (emphasis added). This Court recently found that "[t]he statute does not require that a parent's conduct be directed at his child or that the child suffer injury; it requires that a parent's conduct *threatens* his child's well-being." *In re S.C.*, 248 W. Va. 628, 634, 889 S.E.2d 710, 716 (2023). The evidence shows that at the time the DHS filed the amended petition, Father had not remedied the original conditions to which he stipulated. Therefore, we find that the circuit court did not err in adjudicating L.B. as a neglected child.

---

[11] In light of our decision, we need not address Mother's only assignment of error that the circuit court erred in terminating her parental rights instead of imposing a less restrictive alternative.

[12] *But see generally In re N.H.*, 241 W. Va. 648, 657-58, 827 S.E.2d 436, 445-46 (2019) (discussing the fact that a child was born during the pendency of an abuse and neglect proceeding, but was not included in the proceeding and stating that this Court found it "extremely troubling that no action was taken after the fourth child was born to amend the abuse and neglect petition to include that child in the proceeding below, nor was any petition filed with regard to that child after the disposition order was entered by the circuit court.").

Father also argues that the circuit court erred in terminating his parental rights to all of his children because the DHS failed to prove by clear and convincing evidence that Father had not substantially corrected the conditions that led to his adjudication as a neglecting and abusing parent. In support of this argument, he focuses solely on the progress that he was making in his improvement periods. He contends that there was not "clear and convincing evidence that the alleged incident of domestic violence occurred[,] and [t]his was the sole basis for the court's decision to terminate [Father's] parental rights." Essentially, Father asks us to reassess the credibility determinations made by the court,[13] and the weight of the evidence. We decline to do so.

Based on our review of the evidence, and in light of the applicable standard of review, the circuit court did not err in either its factual finding that a domestic violence incident occurred in which Father struck Mother in the face, or in its decision to terminate Father's parental rights based on domestic violence. The factual finding is supported by interviews from two of Father's children who reported the incident to a service provider and provided detailed accounts of it during forensic interviews, which were recorded and admitted into evidence. The court also considered a police report from the incident, and Mother's domestic violence petition wherein she swore that Father punched her in the face. As set forth *supra*, both petitioners denied that they had any physical contact with each other, admitting only to a heated argument; however, Mother testified that she instructed one of her children to call 9-1-1 and that she left her home with her two children after this incident because she did not feel it was safe. The court also considered the fact that despite Father's involvement in a prior abuse and neglect proceeding concerning domestic violence and completion of the programs designed to address domestic violence, he failed to "use any of the resources taught by those extensive classes." The court made a specific factual finding that his "anger issues, domestic violence, and physical abuse of [one of the children] prior to the filing of the Petition have continued to escalate into domestic violence in the home toward [Mother] as well." West Virginia Code section 49-4-604(d)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Because Father failed to use the resources made available to him through the services provided, it is clear there was no reasonable likelihood he could substantially correct the conditions of abuse

---

[13] *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

and neglect in the near future and the termination of his parental rights was in the children's best interests. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit court to terminate parental rights upon finding no reasonable likelihood conditions of abuse and neglect can be substantially corrected in the near future and when necessary for child's welfare); *see also* Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected") (citation omitted).

For the foregoing reasons, we affirm the circuit court's October 27, 2022, order terminating Father's parental rights to the children; we vacate the order insofar as it terminates Mother's parental rights and upon remand we direct the DHS to file an amended petition as to Mother, addressing the July 7, 2022, domestic violence incident without delay and the circuit court is directed to hold the new adjudicatory hearing in regard to the amended petition also without delay.

The Clerk is directed to issue the mandate in this case forthwith.

Affirmed, in part, vacated, in part, and remanded with directions.

**ISSUED:** March 1, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn