**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 12, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.D. and A.M.**

**No. 23-307** (Wood County 19-JA-213 and 21-JA-13)

**MEMORANDUM DECISION**

The petitioner, Father, N.D.,[1] appeals from a May 2, 2023 order from the Circuit Court of Wood County, terminating Father's parental rights to his children A.D. and A.M.[2] Father argues on appeal that the circuit court erred by (1) adjudicating him as a neglectful parent because the DHS failed to prove neglect by clear and convincing evidence; (2) terminating his parental rights to the children because the circuit court lacked jurisdiction to proceed to the dispositional phase; (3) terminating his parental rights to the children because it was not the least restrictive alternative; and (4) failing to grant him a post-adjudicatory improvement period. Both the West Virginia Department of Human Services ("DHS") and the children's guardian ad litem ("GAL") contend that the circuit court did not err. We agree that the circuit court's rulings were properly supported by the record and should be affirmed. This Court further finds that this case is proper for disposition as a memorandum decision. *See* W. Va. R. App. P. 21(c).

In November 2019, the DHS filed an abuse and neglect petition alleging that the mother neglected her then three-month-old child, A.D., by exposing A.D. to violent behavior in the home and failing to provide adequate and safe housing. The petition contended that the mother suffered from untreated mental health issues which impaired her parenting skills. At the time the initial petition was filed, Father did not reside in the same home as the mother and A.D. and the petition

---

[1] In cases involving sensitive facts, we use initials, rather than the parties' full names. *See generally* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children).

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] Father is represented by counsel Eric K. Powell. Counsel for the DHS are Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda. The children are represented by their guardian ad litem, counsel Keith White.

1

did not assert any allegations against Father. The mother gave birth to a second child, A.M., and the DHS filed an amended petition in January 2021 claiming that the mother did not seek proper prenatal care and consumed alcohol while pregnant with A.M. The first amended petition again alleged that the mother suffered from untreated mental health issues which impaired her parenting skills. Once again, the DHS did not assert any allegations against Father. Following each of the petitions, the circuit court ordered the removal of each child, respectively, from the mother's care. While the DHS did not name him as an offending parent in either petition, Father did not ask for custody of the children because initially, he lived with roommates, and he indicated that it "was not a good place for [A.D.]" After the DHS filed its initial petition, Father then allowed the mother to move into his home to care for her and to assist with her medical issues.[3] During this time, Father participated in drug screening and received visitation with the children.

In March 2021, the circuit court adjudicated the mother as a "neglectful parent on the grounds that her untreated mental illness interfered with her ability to properly parent"[4] the children and granted her a post-adjudicatory improvement period. The court held a review hearing on the mother's improvement period in May 2021. During that hearing, the court discovered that the mother was recently charged, for a second time, with domestic battery against Father. Father filed a motion for increased visitation and decreased drug screening. The court addressed Father's motion at a review hearing in August 2021. Father's counsel stated that Father had been drug screening for "[o]ver a year" and indicated that most screens were negative other than a few positive screens for alcohol and THC.[5] In a subsequent order, the court granted the multidisciplinary team authority to increase visitations if it saw fit and ordered that drug screens be reduced to once a week.

In November 2021, following Father's refusal to take custody of his children for almost two years, the GAL filed a second amended petition asserting allegations against Father for the first time. This petition alleged that (1) Father allowed the mother to live with him despite acts of domestic violence; (2) Father admitted he "will continue to reside with the [mother] because of her health issues and that he wants to be in a position to 'visit' with his children"; (3) Father failed to furnish either child with food, clothing, shelter, supervision, medical care, or education since the filing of the initial petition in November 2019; and (4) Father harmed his children by his refusal, failure, and/or inability to supply them with necessary food, clothing, shelter, supervision, medical care, or education, constituting neglect.

In January 2022, the circuit court held an adjudicatory hearing for Father. During the hearing, Father testified that when DHS filed the initial petition in November 2019, he knew that he was the biological father of A.D., but that he had never lived with the child in the same

---

[3] The mother was diagnosed with Huntington's disease at some point during these proceedings, though the exact date is unclear from the record.

[4] The record on appeal does not include the mother's adjudicatory order, but the final dispositional order indicates that the mother was adjudicated as a neglectful parent.

[5] Father claimed the THC screens resulted from his previous use of CBD products.

residence, and he never provided child support. Father did not immediately seek custody of A.D. because he was not living in a "good place" for A.D., and he was searching for a new residence. Once he secured a new residence in July or August 2020, he again did not seek custody of the children because the mother moved in with him due to her health issues. Father indicated that "it was explained to [him] as long as [the mother] was living with [him]," he would not be able to take custody of the children. He testified that if the mother needed his assistance, he would continue to take care of her and that at the time of the adjudicatory hearing, the mother continued to reside with him. Regarding his care for the children, Father stated that, prior to the beginning of the COVID-19 pandemic, he brought food, toys, and clothing to weekly visits; after the pandemic began, the service provider informed him that he was not allowed to provide these items. In the beginning of these proceedings, Father asked A.D.'s kinship placement if he could provide any monetary assistance for necessities of A.D., but the kinship placement declined the offer. He did not ask again and never "even questioned" whether he should offer any assistance to A.M.'s foster parents. A.D.'s kinship placement testified that A.D. had been in her home since November 2019 and that Father never provided any financial assistance, clothing, or food. She further stated that other than food during the pandemic, she would have accepted all those items had they been offered by Father.

Following the hearing, the circuit court entered an order adjudicating Father as a neglectful parent based upon abandonment. The order failed to make any other findings of fact or conclusions of law. Father filed a motion objecting to the adjudicatory order asserting that the adjudicatory order lacked the requisite findings of fact and conclusions of law, as required by Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, to support its finding that he abandoned the children. Father further maintained that the circuit court improperly adjudicated him of abandonment given that the petition did not explicitly allege that he abandoned the children.[6]

In March 2022, the circuit court held a review hearing where Father requested a post-adjudicatory improvement period and filed a corresponding written motion. The circuit court indicated that it would rule on the written motion at the next hearing but ordered certain courtesy services to begin including domestic violence classes, adult life skills and parenting courses, and participation in alcohol and drug use support programs.

The parties again discussed Father's motion for an improvement period at an April 2022 hearing. The court stated that services and visits should continue, and it would review the record and rule on the motion at a later date. In August 2022, the court held a hearing in response to A.M.'s foster parents filing a motion to cease all visitations. The DHS presented evidence reflecting new incidents of domestic violence between Father and the mother resulting in both

---

[6] During the adjudicatory hearing, the DHS specifically argued that Father's intentional decision not to provide support to his children, but instead to take care of the mother "demonstrated a subtle [sic] purpose to forego his parental responsibilities to both of these children." At no point during this hearing did Father object to this allegation for not being specifically alleged in the petition; rather, he asserted that "[t]here [wa]s no subtle [sic] purpose here to forego his parental responsibilities."

parties being charged with domestic battery. The court suspended visitation and set the matter for disposition.

Prior to Father's dispositional hearings, on September 12, 2022, the circuit court entered a *nunc pro tunc* order addressing Father's February 2022 motion objecting to the adjudicatory order. The circuit court found that Father "permitted [the mother] to move in and live with him" even though he "kn[ew] that his children cannot come live with him while [the mother] is present and living in his home, due to her being adjudicated an abusing and neglectful parent." The circuit court further found that "[b]y virtue of this choice," Father "failed and refused to provide the basic necessities for his children" including food, clothing, shelter, supervision, and medical care. Therefore, the court supplemented its previous order and confirmed its adjudication of Father as a neglectful parent and the children as neglected children.

The circuit court held two dispositional hearings on September 14, 2022, and October 7, 2022, where it considered both the DHS's motion to terminate Father's parental rights and Father's motion for a post-adjudicatory improvement period. The court took judicial notice of the record and the DHS presented additional testimony from a CPS caseworker. The CPS caseworker testified that while Father did not receive services through an official improvement period, he received services throughout the proceeding "as a courtesy." She stated that Father received supervised visitation[7] and that the caseworker attended some of those supervised visits. During those visits, the CPS caseworker observed that Father struggled to bond with A.M. In addition, Father informed her that he was looking for other services, including Alcoholics Anonymous and therapy, but CPS had no documentation that he started those services. Other than expressing to the caseworker that he was looking into those services, Father never contacted her for assistance in setting up these additional services. Moreover, the caseworker expressed concern with Father and the mother living together due to continued domestic violence, including an incident only days earlier when Father texted the CPS caseworker photos of his injuries and a statement that the mother used drugs and attacked him. The CPS caseworker further explained that the DHS recommended terminating Father's parental rights due to his failure to take custody of the children because he continued to indicate that he was the "caregiver" for the mother.

In May 2023, the circuit court entered an order terminating Father's parental rights.[8] The court found that placing the children in Father's home was "contrary to the best interest[s] of the children . . . [because Father] continue[d] to reside with the [mother], despite the fact [that] she ha[d] been adjudicated as a neglectful parent and he being a victim of domestic violence at her hands on a continued basis" and despite knowing further that he cannot have the children back if

---

[7] The CPS caseworker testified that, initially, Father also attended other services provided to the mother, including parenting and adult life skills classes. However, at some point in the proceedings, Father stopped attending those services with the mother due to arguments between them causing the service provider to feel uncomfortable and unsafe providing them services together.

[8] In the same dispositional order, the circuit court also terminated the mother's parental rights to both children. She did not file an appeal regarding that decision. The permanency plan for both children is adoption in their respective placements.

the mother is present. Father's failure to provide any care, food, clothing, shelter, supervision, medical care, and support to the children, as well as his "past refusal to do anything other [than] visit with the children," showed he was unlikely to participate in an improvement period. Therefore, the court denied Father's motion for a post-adjudicatory improvement period. For these same reasons, the court found that termination was necessary for the welfare of the children and that there was no reasonable likelihood the conditions of neglect could be substantially corrected in the near future. Father now appeals to this Court.

We consider a circuit court's rulings in an abuse and neglect case in accordance with the following standard of review:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In Int. of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

Father first argues that the circuit court erred by adjudicating him as a neglectful parent because the DHS failed to prove by clear and convincing evidence that he neglected his children as alleged in the second amended petition. We disagree.

This Court has held that when prosecuting an abuse and neglect proceeding, the DHS is required to prove the allegations set forth in its petition by clear and convincing evidence. *See* Syl. pt. 1, in part, *In Int. of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981) ("W. Va. Code, 49-6-2(c) [1980] [now W. Va. Code § 49-4-601(i)], requires the State Department of Welfare [now the DHS], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.'") "Clear and convincing evidence means that more than a mere scintilla of evidence has been presented to establish the veracity of the allegations of abuse and/or neglect, but it does not impose as exacting an evidentiary burden as criminal proceedings which generally require proof beyond a reasonable doubt." *In re A.M.*, 243 W. Va. 593, 598, 849 S.E.2d 371, 376 (2020).

West Virginia Code § 49-1-201 defines a "Neglected child," in part, as a child

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure[,] or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education,

5

when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]

That same code provision also defines "Abandonment" to mean "any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child[.]" W. Va. Code § 49-1-201.

Here, the record demonstrates that, based upon the circumstances in this case, the circuit court made sufficient findings to support adjudication of neglect by abandonment. The testimony established by clear and convincing evidence that Father neglected his children by his refusal to provide any care, food, clothing, shelter, supervision, medical care, and support to the children as alleged in the petition, thereby demonstrating his "settled purpose to forego the duties and parental responsibilities to the child[ren]." *See* W. Va. Code § 49-1-201.[9] Specifically, the DHS presented testimony that Father made an intentional decision to allow the mother to continue to live in his home while knowing that meant he could not take custody of his children. Father admitted that

_____

[9] In his reply brief, Father maintains that the second amended petition failed to sufficiently allege abandonment, and therefore, he could not be adjudicated of abandonment. We are not persuaded by his argument given the circumstances of this matter. As we recently recognized, the statutory definition of neglect includes abandonment:

> "The[ ]statutory definitions of abandonment and neglect are part of a body of legislation that was enacted to protect the welfare of children. To that end, it is essential to remember that "effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, in part, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

> In giving each of these statutory definitions effect so as to accomplish the critically important legislative purpose of protecting the welfare of children, *one is led to the inescapable conclusion that . . . [a] parent can be adjudicated as having abandoned his or her child[ren] through evidence of the parent's inability to meet even the most minimal parental duties and responsibilities to the child[ren]. Moreover, it is clear that the statutory definition of neglect encompasses . . . abandonment, as defined by statute[.]*"

*In re B.P.*, 249 W. Va. 274, 280, 895 S.E.2d 129, 135 (2023) (quoting *In re A.P.-1*, 241 W. Va. 688, 696, 827 S.E.2d 830, 838 (2019) (Workman, J., concurring, in part, and dissenting, in part)). Here, the second amended petition did not quote the statutory definition of "abandonment," but included allegations that encompassed conduct demonstrating Father's settled purpose to forego his parental obligations. Moreover, throughout the adjudicatory hearing, the DHS argued that the circuit court should find Father abandoned the children. While Father contended that his conduct did not constitute abandonment, he did not object on the ground that the petition did not properly allege abandonment. While this Court discourages the use of such generalities in abuse and neglect petitions, under the circumstances here, the petition gave Father sufficient notice of the abandonment allegation.

neither child had ever lived in the same residence as him, and except for one occasion, he had never even attempted to provide monetary assistance for the upbringing of the children.[10] Significantly, for almost two years the DHS did not consider Father to be an offending parent, and Father never requested to take custody of the children. While Father argues that his conduct did not place his children in harm because their respective placements provided safe environments, he is entitled to no relief. As we have found, "[a] child abuse and neglect petition may be filed when a parent has abandoned a child in a third-party's care, regardless of whether the child is safe in that placement." *In re S.B.*, No. 19-0583, 2020 WL 598884, at *3 (W. Va. Feb. 7, 2020) (memorandum decision). Based upon the foregoing, we find that the circuit court did not err in adjudicating Father as a neglectful parent and the children as neglected.[11]

Related to Father's first assignment of error, he also asserts that because the adjudication was improper, the circuit court did not have jurisdiction to proceed to the dispositional phase. This Court recently reiterated in *In re Z.S.-1* that "[w]ithout proper adjudications of each child identified in the petition as abused and/or neglected children and each of the parents named as respondents to the petition as abusing and/or neglectful parents, the circuit court cannot proceed to the dispositional phase of the proceedings." 249 W. Va. 14, 20-21, 893 S.E.2d 621, 627-28 (2023). Because we find that the circuit court properly adjudicated Father, we similarly find that the circuit court did not err in proceeding to disposition.

Father next contends that the circuit court erred by terminating his parental rights because the termination was not necessary for the welfare of the children.[12] While courts generally should

---

[10] Father argues that his lack of monetary assistance should not be used against him because the court entered an order finding that he owed zero dollars in monthly child support. We are not persuaded by this argument for several reasons. First, the circuit court's order does not specifically rely on lack of child support as a reason for termination; rather, it is the totality of Father's lack of assistance for his children of any kind. Second, the circuit court entered this child support order following Father's adjudication, well over two years after Father declined custody of his children.

[11] To the extent that Father also contends that the circuit court failed to make the required findings of fact and conclusions of law following the adjudicatory hearing pursuant to Rule 27 of the West Virginia Rules of Child Abuse and Neglect Proceedings and West Virginia Code § 49-4-601, we disagree. While the original January 12, 2022 adjudicatory order did not make the required findings of fact and conclusions of law, the court remedied this deficiency by entering an additional order, *nunc pro tunc*, addressing those issues. Additionally, the circuit court entered the additional order prior to Father's dispositional hearings and final dispositional order.

[12] Father argues that this Court's decision in *In re S.C.*, 245 W. Va. 677, 865 S.E.2d 79 (2021) supports his position. In that case, we reversed the circuit court's termination of the father's parental rights pursuant to West Virginia Code § 49-4-604(c)(6). 245 W. Va. at 689-91, 865 S.E.2d at 91-93. This Court found that a disposition under West Virginia Code § 49-4-604(c)(5) was more appropriate for several reasons. 245 W. Va. at 689-91, 865 S.E.2d at 91-93. First, the circuit court in *In re S.C.* did not make the statutory findings required for a termination of parental rights: (1) that there was "no reasonable likelihood that the conditions of neglect or abuse can be

7

employ the least restrictive alternative disposition, "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years[.]" Syl. pt. 1, in part, *In re R. J. M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Furthermore, a court can terminate parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syl. pt. 2, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114. West Virginia Code § 49-4-604(d)(4) provides that there is no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future when "[t]he abusing parent or parents have abandoned the child[.]" Here, the circuit court found that Father abandoned A.D. and A.M. by allowing the mother to remain in his home and by failing and/or refusing to provide the basic necessities for his children including food, clothing, shelter, supervision, and medical care, and the record supports this finding. Thus, we decline to disturb the circuit court's findings and conclude that the circuit court did not err in terminating Father's parental rights.[13]

---

substantially corrected" and (2) that the termination of parental rights was "necessary for the welfare of the child." *Id.* at 690, 865 S.E.2d at 92. Second, the record in that case supported the circuit court's decision to not make the "reasonable likelihood" and "necessary for the welfare" statutory findings. *Id.* Here, the circuit court made the requisite statutory and factual findings. Therefore, we find that *In re S.C.* is distinguishable from the present matter. *Cf. In re H.T.*, 250 W. Va. 11, ___, 902 S.E.2d 143, 151-52 (2024) (finding *In re S.C.* distinguishable from the facts of the matter).

[13] To the extent that Father contends that he was a battered parent and the circuit court failed to make this determination or to consider it during the proceedings, we disagree. According to West Virginia Code § 49-1-201, a

> "[b]attered parent" for the purposes of § 49-4-601 et seq. of this code means a respondent parent, guardian, or other custodian who has been adjudicated by the court to have not condoned the abuse or neglect and who has not been able to stop the abuse or neglect of the child or children due to being the victim of domestic violence as defined by § 48-27-202 of this code, which was perpetrated by the same person or persons determined to have abused or neglected the child or children.

Our review of the record does not support a finding that Father satisfied this definition. As we have stated, "in order to be considered a battered parent under Chapter 49 of the West Virginia Code, there must be evidence that the parent did not condone the abuse or neglect and was unable to stop the abuse or neglect of the children due to being the victim of domestic violence." *In re M.R.*, No. 23-359, 2024 WL 2281125, at *3 (W. Va. May 20, 2024) (memorandum decision). Here, while the mother may have engaged in domestic violence against Father, the facts of this case do not establish that Father was unable to stop the mother's abuse or neglect because of the domestic violence at issue. The record also establishes that the Father made an affirmative decision to allow the mother to reside with him due to her health concerns.

Finally, Father contends that the circuit court abused its discretion by failing to grant him a post-adjudicatory improvement period. Pursuant to West Virginia Code § 49-4-610(2),

> [a]fter finding that a child is an abused or neglected child pursuant to section six hundred one of this article, a court may grant a respondent a [ ] [post-adjudicatory] improvement period of a period not to exceed six months when:
>
> . . . .
>
> (B) The respondent [parent] demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period[.]

Here, the circuit court denied Father's motion for a post-adjudicatory improvement period, finding that "[Father] has shown the [c]ourt he has no desire to do what is necessary to have his children returned." The circuit court made several findings regarding Father's inability to satisfy his burden, including that DHS offered services to Father, and except for visitation, Father "declined to take any further responsibility for the children or take advantage of other services."[14] West Virginia Code § 49-4-610(2) provides circuit courts with discretion in ruling on a motion for an improvement period. Therefore, the circuit court did not abuse its discretion in denying Father's motion for a post-adjudicatory improvement period.

Accordingly, the circuit court's May 2, 2023 dispositional order is hereby affirmed.

Affirmed.

**ISSUED:** November 12, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead

---

[14] Despite the circuit court allowing the DHS to provide courtesy services to Father following his adjudication, Father never requested help in obtaining those services. Additionally, there is no evidence that Father participated in those services and no record that the DHS refused to help set up those services upon request. *Cf. In re C.J.*, No. 21-0985, 2022 WL 1505988, at *3 (W. Va. May 12, 2022) (memorandum decision) ("Moreover, it was petitioner's responsibility to initiate services aimed at correcting the conditions of abuse and neglect. According to West Virginia Code § 49-4-610(4)(A), when a parent is granted an improvement period 'the [parent] shall be responsible for the initiation and completion of all terms of the improvement period.'").

Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn