IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2025 Term

_____

No. 23-729

_____

In re P.K.

**FILED**

**November 5, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Lincoln County
The Honorable Jay M. Hoke, Judge
No. CC-22-2021-JA-47

VACATED AND REMANDED
WITH DIRECTIONS

_____

Submitted: September 17, 2025
Filed: November 5, 2025

Mackenzie A. Holdren, Esq.
The Mackenzie Holdren
Law Firm, PLLC
Summersville, West Virginia
Counsel for Petitioner

S. Brent Blankenship, Esq.
S. Brent Blankenship, Attorney
at Law, PLLC
Barboursville, West Virginia
Guardian ad litem

John B. McCuskey, Esq.
Attorney General
Charleston, West Virginia
Kristen E. Ross, Esq.
Assistant Attorney General
Martinsburg, West Virginia
Counsel for Respondent West
Virginia Department of
Human Services

JUSTICE TRUMP delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996)." Syllabus Point 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

2. "In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va. Code, 49-6-5 [now § 49-4-604], it must hold a hearing under W.Va. Code, 49-6-2 [now § 49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syllabus Point 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983).

i

3. Allegations of abuse and neglect for which a respondent has not been previously adjudicated do not constitute a material change of circumstances for purposes of modification of a dispositional order under Rule 46 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and West Virginia Code § 49-4-606(a). Such allegations must be pleaded in a verified petition or, pursuant to Rule 19 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, a verified amended petition, and adjudicated in accordance with the provisions of West Virginia Code § 49-4-601, *et seq.*

4. "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syllabus Point 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

**TRUMP, Justice**:

Petitioner is the paternal grandmother of the subject child, P.K.[1] An abuse and neglect petition was filed against petitioner and others in the Circuit Court of Lincoln County, West Virginia. Petitioner was adjudicated based upon deplorable living conditions and P.K. was removed from petitioner's home. Petitioner and P.K. were ultimately dismissed from the proceedings and reunified, with P.K. being returned to petitioner's care. Subsequently, in an amended petition, the West Virginia Department of Human Services (DHS)[2] asserted new allegations of abuse and neglect against petitioner and, without affording petitioner an adjudicatory hearing on these allegations, the circuit court terminated petitioner's custodial rights.

Because custodial rights may not be terminated absent a prerequisite finding of abuse or neglect or both, and because petitioner was not adjudicated on the allegations in the amended petition, we vacate the circuit court's order terminating petitioner's custodial rights to P.K. and remand this matter to the circuit court for further proceedings.

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[2] Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

Additionally, pursuant to West Virginia Code § 5F-2-1a (2025), the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2 (2025). For purposes of abuse and neglect appeals, the agency is now the Department of Human Services (DHS).

1

## I.     Facts and Procedural History

This case commenced on November 19, 2021, with the filing of an abuse and neglect petition seeking the immediate custody of P.K. The named respondents included P.K.'s mother and father, who had not had contact with P.K. for five years; P.K.'s paternal aunt, G.N.M., who, at the time, was P.K.'s legal guardian; and petitioner, with whom P.K. lived (in petitioner's home) because G.N.M. was unable to care for her due to illness.[3] Also named as a respondent was petitioner's mother (P.K.'s great-grandmother), with whom petitioner and P.K. lived part-time. As to petitioner, the petition alleged that the homes in which petitioner and P.K. lived (i.e., petitioner's home and petitioner's mother's home) were "deplorable" and unsafe, with "holes in the porch that [are] a safety hazard, broken out windows and garbage every place outside[;]" lacked running water and adequate amounts of food; and "had refuse and human waste that had not been cleaned up. [Petitioner] does not have an appropriate or safe residence for her and [P.K.] to live." P.K. was removed from petitioner's home and placed in the custody of the DHS.[4]

---

[3] According to the petition, petitioner "has no legal rights to [P.K.], but [petitioner] has [P.K.] living with her and according to [petitioner][,] [G.N.M.] gave [P.K.] to her but not legally."

[4] As to G.N.M., the initial petition alleged that G.N.M.

> has neglected her parental duties evidenced by not providing medical care of [sic] the child such as taking [P.K.] to the dentist, or medical visits or vaccines. [G.N.M] has also neglected to register [P.K.] for school. [G.N.M.] allows her mother, [petitioner], to have [P.K.] living in an unsuitable shelter. Without legal physical custody or guardianship of

2

Petitioner waived her right to a preliminary hearing. By order entered January 19, 2022, the circuit court granted petitioner's request for supervised visitation. At a March 8, 2022, adjudicatory hearing, petitioner admitted to the allegations in the petition and stipulated to a finding "of abuse and/or neglect on her part." Her motion for a post-adjudicatory improvement period was granted. Following execution of a family case plan on April 21, 2022, petitioner began her post-adjudicatory improvement period, and she was granted physical placement of P.K.

Following a hearing conducted on May 23, 2022, the circuit court entered an order on June 27, 2022, reflecting, inter alia, that P.K. "is doing well in her new placement with" petitioner and ordering the child to remain in her current placement with petitioner.

An amended petition was filed on May 24, 2022, to add another child born to P.K.'s mother by an unknown father, who was also named in the amended petition. The child, N.T., was previously placed in the care of the mother's father, L.A. A second amended petition was filed on December 7, 2022, upon the birth of another child born to

---

[P.K.][,] [petitioner] cannot accomplish any medical care for [P.K.] nor register the school age child for school."

The parental rights of P.K.'s biological mother and father and the legal guardianship rights of G.N.M. were ultimately terminated and are not at issue in this appeal.

P.K.'s mother by another father, C.B., who was named as a respondent. The child, A.B., was removed and placed with the mother's father, L.A.[5]

At a hearing held on January 26, 2023, the guardian ad litem reported, on behalf of the multidisciplinary team (MDT), that P.K. "has been reunified with [petitioner] for a while. Everything is going well. Both CASA [Court Appointed Special Advocate] and the Department report that [P.K.] is doing well, and there is no need for [them] to be further involved in this case." The guardian ad litem recommended that the circuit court dismiss petitioner and P.K. from the proceedings.[6] Without objection, the circuit court granted petitioner's motion and dismissed petitioner and P.K. from the case, but the proceedings remained ongoing as to the other children not at issue in this appeal.[7]

On May 10, 2023, the DHS filed a motion to modify the January 26, 2023, ruling that returned physical custody of P.K. to petitioner,[8] pursuant to Rule 46 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. The DHS's motion

---

[5] The parental rights of these children's mother and their respective fathers were ultimately terminated and are not at issue in this appeal.

[6] We glean from the January 26, 2023, hearing transcript that, at a prior hearing, petitioner's counsel made a motion to dismiss petitioner and P.K. from the proceedings, and the circuit court directed the parties to discuss the motion at a subsequent MDT meeting. A written motion to dismiss does not appear to have been filed.

[7] A written order memorializing petitioner's dismissal from the case was not entered.

[8] The motion to modify indicates that petitioner had also been granted legal custody of P.K.

4

alleged that in the time since petitioner and P.K. were dismissed from the proceedings and P.K. was returned to petitioner's custody, petitioner had permitted contact between the child and her father, J.K. (whose parental rights had long been terminated), by allowing J.K. to drop P.K. off at school and to live, with his girlfriend, in petitioner's home; that upon visiting petitioner's home, the DHS learned that a registered sex offender, J.T.M., was at the home and that P.K. "was instructed to be picked up and dropped off by the school bus at the home of" H.H., another registered sex offender; and that petitioner had failed to timely address P.K.'s "serious issues regarding her vision," noting P.K.'s "eyesight is so significantly impaired that [she] cannot see the apps on her iPad [at school]." Based upon the foregoing, the DHS requested that the circuit court modify its prior order placing P.K. in the custody of petitioner based on the material change in circumstances outlined in the motion and that the court hold a hearing thereon.

According to the DHS, because the circuit court failed to hold a hearing on its motion to modify, the DHS proceeded to file, on June 21, 2023, a third amended petition that included similar (but more detailed) allegations as contained in the motion to modify, as well as additional allegations. The third amended petition alleged that petitioner, as P.K.'s legal custodian, failed to take the child to see an eye doctor, despite the fact that P.K. "was struggling with her vision" including "start[ing] to have a cross eye," "get[ting] headaches and can't see the board [at school][;]" that P.K. was frequently absent from school; that petitioner did not have reliable transportation; that P.K.'s father, whose parental rights had been terminated, sometimes transports P.K. to and from school; that

5

P.K.'s mother, whose parental rights had also been terminated, had dropped off P.K. at school at least once; that P.K.'s father and his girlfriend were living with petitioner, resulting in P.K. sleeping on a mattress in the kitchen; that a registered sex offender, J.T.M., was in the home; that the school bus had picked up and dropped off P.K. at the home of H.H., another registered sex offender; that petitioner had not been getting paid for her employment for approximately one month; that petitioner and P.K. were evicted from their apartment; and that although child protective services workers allowed petitioner "enough time to move into a friend's home . . . . [the worker] later learned that [petitioner] and [P.K.] moved to [Ohio]." The DHS requested and was granted immediate removal of P.K. from the home.[9]

The DHS's application for ratification of emergency custody of P.K. was granted by order entered June 21, 2023; however, there is no indication in the record that petitioner was afforded a preliminary hearing.[10]

At an initial hearing held on July 5, 2023, the circuit court granted petitioner supervised visitation with P.K. A status review hearing was conducted on August 8, 2023,

---

[9] P.K. was placed in the home of her maternal grandfather, who also had placement of P.K.'s two half-siblings.

[10] *See* W. Va. R. P. for Abuse & Neglect Proc. 22(a) ("If at the time the petition was filed, the court placed or continued the child in the emergency custody of the Department or a responsible person, a preliminary hearing on emergency custody shall be initiated within ten (10) days after the continuation or transfer of custody is ordered as required by W. Va. Code § 49-4-602.").

at which hearing petitioner's request for increased visitation with P.K. was denied. The August 11, 2023, order entered following that hearing set a "further evidentiary dispositional hearing" for September 6, 2023.

The "evidentiary dispositional hearing" was conducted on September 6, 2023, at which Child Protective Services (CPS) worker Hillary D. Sowards and P.K.'s guardian ad litem testified, and the circuit court considered the report of the MDT and other evidence of record. Petitioner did not testify or offer any evidence on her own behalf. The circuit court determined, in its September 19, 2023, dispositional order that:

> at the time of the filing of the initial Petition and the Third Amended Petition, . . . [P.K.] was an abused and neglected child, and that [petitioner] was an abusive and neglectful Custodian, that the Custodian failed to care for [P.K.'s] medical needs such as her poor eyesight which has led to further issues like headaches, the Custodian failed to protect [P.K.] by constantly exposing her to registered sex offenders and consistently permitted a terminated parent to care for [P.K.], the Custodian caused educational neglect by [P.K.] accruing many unexcused absences from school, the Custodian's lifestyle consistently exposed [P.K.] to drug use, crime, and law enforcement responses,[11] the Custodian often permitted transients to come and go in her home, that [P.K.] slept on a mattress on the kitchen floor, the Custodian has not been able to maintain reliable transportation and relies on others to transport [P.K.], the Custodian does not have a

---

[11] A copy of the transcript of the September 6, 2023, hearing was not made a part of the appendix record. However, the dispositional order included a "Factual History" that chronicled petitioner's arrest and incarceration on various drug charges in 2011 (prior to P.K.'s birth) and 2017 and the fact that petitioner and her live-in boyfriend failed several random drug and alcohol screens in 2022 prior to P.K. being returned to her custody in January 2023, and dismissed from the proceedings. The circuit court's order denounced petitioner's involvement in the "illicit drug world, [which] . . . . carries with it a potential for actual violence to a person."

7

> sufficient and stable source of income, and the Custodian did not maintain stable housing.

(Footnote added).

The circuit court terminated petitioner's custodial rights, concluding that such disposition was "necessary in order to protect the welfare of [P.K.] from further abuse and neglect, and there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future." W. Va. Code § 49-4-604(c)(6).[12] The order further prohibited all contact and visitation between P.K. and petitioner.[13]

Petitioner thereafter filed a motion for reconsideration and to modify the dispositional order, arguing that the September 6, 2023, hearing "should have been a re-opened adjudicatory hearing based on the new allegations included in the *Third Amended Petition*," *see* W. Va. R. P. for Abuse & Neglect Proc. 19(b), and requesting that the circuit court hold such a hearing. The circuit court denied petitioner's motion and upheld the termination of petitioner's custodial rights to P.K.[14] This appeal followed.

---

[12] Even though the September 6, 2023, hearing was clearly held to address the allegations in the third amended petition, and not the DHS's earlier-filed motion to modify disposition, the September 19, 2023, order nonetheless specifically referenced Rule 46 and West Virginia Code § 49-4-606(a) (2015), finding "by clear and convincing evidence that a material change of circumstances exists and that the modification of [P.K.'s] placement is in her best interests." *See* discussion *infra.*

[13] In subsequent orders, the circuit court identified the September 6, 2023, hearing as an "evidentiary based Adjudicatory and Dispositional Hearing."

[14] A hearing on the motion was conducted on October 19, 2023. A copy of the hearing transcript was not made a part of the appendix record.

## II. Standard of Review

Our review of dispositions in abuse and neglect matters is well-established:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996)."

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

With these standards in mind, we consider the parties' arguments.

## III. Discussion

On appeal, petitioner argues that the circuit court erred in terminating her custodial rights to P.K. without first affording her an adjudicatory hearing on the third amended petition, which included allegations of abuse and neglect against her for which she was not previously adjudicated. Petitioner contends that the circuit court further erred to the extent it utilized the September 6, 2023, hearing to both adjudicate her and terminate her custodial rights because she did not agree to an accelerated proceeding. The DHS

9

counters that, rather than act on the third amended petition, the circuit court should have held a hearing on the DHS's earlier-filed Rule 46 motion to modify disposition, which alleged that a material change in circumstances relating to the initial petition had occurred after petitioner regained custody of P.K., warranting the imposition of a more restrictive disposition such as termination, in the best interest of P.K. The DHS argues that the matter should be remanded for a hearing on its motion to modify disposition or, alternatively, for an order directing the DHS to file a new petition against petitioner because Rule 19(b) does not permit the filing of an amended petition after disposition. The guardian ad litem contends that the September 6, 2023, hearing was, in effect, a hearing on the DHS's motion to modify disposition, *see* n.12, and, as such, the circuit court did not err in failing to hold distinct adjudicatory and dispositional hearings prior to terminating petitioner's custodial rights. According to the guardian ad litem, petitioner was on notice that the hearing could result in the termination of her rights, and that she was afforded the opportunity to present substantive evidence on her behalf but failed to do so. Accordingly, he argues, the termination of petitioner's custodial rights should be affirmed.

A.

The allegations of abuse and neglect against petitioner contained in the initial petition filed in November 2021 related specifically to the deplorable conditions of the homes where petitioner and P.K. were living at the time the initial petition was filed. In that proceeding, P.K. was removed, petitioner waived her preliminary hearing, and then subsequently stipulated to a finding of abuse and/or neglect. Petitioner and P.K. were

10

eventually dismissed from the proceedings and reunified, and petitioner became P.K.'s permanent legal and physical custodian. In the third amended petition, the DHS alleged that petitioner committed medical neglect of P.K. relating to her deteriorating vision, allowed P.K. to have frequent absences from school, permitted P.K. to have contact with two known registered sex offenders and her biological parents (whose parental rights had been terminated), and unstable housing. On appeal, petitioner argues that these allegations were unrelated to the deplorable living conditions to which she stipulated in the initial petition. Petitioner contends that she was entitled to an adjudicatory hearing on the new allegations of abuse and neglect as contained in the third amended petition. We agree.

Rule 19(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides:

> If new allegations arise after the final adjudicatory hearing, the allegations should be included in an amended petition rather than in a separate petition in a new civil action, and the final adjudicatory hearing shall be re-opened for the purpose of hearing evidence on the new allegations in the amended petition.

Pursuant to Rule 19(b), the adjudicatory hearing should have been reopened for the purpose of hearing evidence on the new allegations in the third amended petition; consequently, the circuit court erred in proceeding directly to disposition.[15] As we have explained, repeatedly, proper adjudication is a prerequisite to proceeding to the disposition stage:

---

[15] To the extent the DHS argues that the circuit court erred in proceeding on an amended petition, rather than require the filing of a new petition, because Rule 19(b) does not permit the filing of an amended petition after disposition, we disagree. In *In re M.E.*,

11

> In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va. Code, 49-6-5 [now § 49-4-604], it must hold a hearing under W.Va. Code, 49-6-2 [now § 49-4-601], and determine "whether such child is abused or neglected." Such a finding is a prerequisite to further continuation of the case.

Syl. Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983); *see In re Z.S.-1*, 249 W. Va. 14, 21, 893 S.E.2d 621, 628 (2023) ("Without properly made findings of abuse and/or neglect at adjudication, a case cannot proceed to disposition."); *In re A.G.*, 247 W. Va. 249, 255, 878 S.E.2d 744, 750 (2022) ("[W]ithout first holding an adjudicatory hearing, the circuit court could not lawfully proceed to disposition and termination of [petitioner's] parental rights."). Fundamentally, "'[t]he two-stage [adjudicatory and dispositional] process supports the constitutional protections afforded to parents in permanent child removal cases—constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment.'" *In re A.P.-1*, 241 W. Va. 688, 694, 827 S.E.2d 830, 836 (2019) (quoting *In re K.H.*, No. 18-0282, 2018 WL 6016722, at *5 (W. Va. Nov. 16, 2018)

---

16-0006, 2016 WL 3463474, at *5 (W. Va. June 21, 2016) (memorandum decision), we rejected the petitioner's argument that "filing an amended petition was improper because the original petition was dismissed upon the children's return to [the petitioner's] home" and concluded that the DHS appropriately amended the original petition. The circuit court reopened the adjudicatory hearing in compliance with Rule 19(b), permitting the petitioner "to present evidence on the[] new allegations. Moreover, the filing of the amended petition in this matter was in keeping with our interpretation of Rule 19 that provides for liberal amendment in the interest of [the] children's best interest." *In re M.E.*, 2016 WL 3463474, at *5. Here, too, especially in light of the ongoing proceedings involving P.K.'s half-siblings, the circuit court did not err in proceeding on an amended petition.

(memorandum decision)). Given the importance of the rights at issue, "[o]ur insistence on procedural integrity . . . is not hollow formality." *Id.* at 695, 827 S.E.2d at 837.[16]

---

[16] There are instances in which the dispositional hearing may immediately follow the adjudicatory hearing, so long as certain prerequisites are met:

> Pursuant to Rule 32 of the West Virginia Rules of Procedure for Child Abuse and Neglect, circuit courts may hold accelerated disposition hearings immediately following adjudication hearings if: (1) the parties agree; (2) the child's case plan which meets the requirements of W.Va. Code §§ 49–6–5 [now § 49-4-604] and 49–6D–3 [now § 49-4-408] is provided to the court or the party or parties waive the requirement that the child's case plan be submitted prior to disposition; and (3) notice is provided or waived.

Syl. Pt. 3, *In re Travis W.*, 206 W. Va. 478, 525 S.E.2d 669 (1999).

We see no indication that the requirements of Rule 32 were met in this case. First, petitioner represents—and respondents do not dispute—that petitioner did not agree to an accelerated proceeding such that the September 6, 2023, hearing could be utilized to both adjudicate her on the allegations of the third amended petition and potentially terminate her custodial rights. Second, the appendix record is devoid of evidence that a case plan "was completed and provided to the court or [that] [petitioner] . . . waived the requirement that [P.K.'s] case plan be submitted prior to disposition" or that "[n]otice of the disposition hearing was provided to or waived by" petitioner, as required by Rule 32(b). Indeed, the September 18, 2023, order entered following the September 6, 2023, hearing clearly identified the proceeding as a dispositional hearing. The characterization of the hearing in subsequent circuit court orders as an evidentiary adjudicatory and dispositional hearing is not supported by the record. *See* n.13, *supra. See In re J.M.*, No. 13-0439, 2013 WL 5475864 (W. Va. Oct. 1, 2013) (memorandum decision) (vacating order terminating parental rights following combined adjudicatory and dispositional hearing for failure to comply with Rule 32(b) and remanding for further proceedings).

13

B.

This leads us to the DHS's argument that, rather than act on the third amended petition, the circuit court should have conducted a hearing on the DHS's Rule 46 motion to modify the petitioner's disposition as P.K.'s legal and physical custodian.

Rule 46 provides, in relevant part:

> A child, a child's parent (whose parental rights have not been terminated), a child's custodian, or the Department shall file a motion in the circuit court of original jurisdiction in order to modify or supplement an order of the court at any time; . . . . The court shall conduct a hearing and, upon a showing of a material change of circumstances, may modify or supplement the order if, by clear and convincing evidence, it is in the best interest of the child.

Relatedly, West Virginia Code § 49-4-606(a) provides, in pertinent part:

> (a) Upon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing pursuant to section six hundred four of this article and may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests.

Similar to the allegations in the third amended petition, the DHS's motion to modify disposition alleged that a material change of circumstances had occurred after P.K. was returned to petitioner's custody and petitioner and P.K. were dismissed from the case—that is, that petitioner permitted P.K. to have contact with her biological father and registered sex offenders and committed medical neglect relating to P.K.'s deteriorating vision.

14

As noted above, these allegations are conditions of abuse and neglect upon which petitioner had not been previously adjudicated and, pursuant to Rule 19(b), were properly the subject of the third amended petition. Under our case law, and contrary to the DHS's argument, they do not constitute a material change of circumstances within the meaning of Rule 46 or West Virginia Code § 49-4-606(a). For example, in *In re D.G.*, No. 22-767, 2023 WL 6144639 (W. Va. Sept. 20, 2023) (memorandum decision), the petitioner mother stipulated to allegations of abuse and neglect relating to substance abuse, domestic violence in the home, and volatile behavior in the child's presence. In granting disposition pursuant to West Virginia Code § 49-4-604(c)(5) (which left the mother's parental rights intact while placing the child with relatives), the dispositional order provided that "if the adult respondents desire to modify the disposition in this matter, they shall provide proof to the court that 'they have sought treatment and addressed the issues related to domestic violence, in addition to successful completion of substance abuse treatment and the establishment of long-term sobriety.'" 2023 WL 6144639, at *2. The guardian ad litem subsequently moved for modification of disposition, alleging that a material change in circumstances had occurred since disposition. At the modification hearing, evidence was presented showing that the mother left her substance abuse treatment program prior to completing it, that she was subsequently incarcerated, that she yelled at and threatened the child's kinship placement, and that she failed to communicate with her abuse and neglect attorney and participate in the proceedings after disposition. The circuit court terminated the mother's parental rights in the best interest of the child, and this Court affirmed,

concluding that "the worsening of [the mother's] condition . . . was the change in circumstances that justified modification." *Id.* at \*3.

Likewise, in *In re E.S.*, No. 16-0821, 2017 WL 678881 (W. Va. Feb. 21, 2017) (memorandum decision), after the father's parental rights were terminated, the DHS filed a motion to modify the noncustodial mother's disposition and to terminate her parental rights. In affirming the circuit court's order granting the motion, this Court noted that the mother's parental rights were initially left "intact while the father's case continued so that she could receive services in an attempt to correct" her issues with substance abuse, depression, and housing. *Id.* at \*3. The mother was advised at disposition that "'if the father doesn't successfully complete his improvement period, [her disposition] could very easily change' because, at that point, the case would turn on issues of permanency for the children." *Id.* We explained that although the evidence showed that the mother successfully treated her substance abuse, she failed to comply with the terms and conditions of her improvement period relating to appropriate housing and obtaining mental health treatment. We thus concluded that these material change of circumstances warranted termination of the mother's parental rights, in the best interest of the child. *Id.*

Additionally, in *In re A.M.*, No. 20-0180, 2020 WL 5652426 (W. Va. Sept. 23, 2020) (memorandum decision), after the mother murdered the child's father in the child's presence, she was granted disposition under West Virginia Code § 49-4-604(c)(5) (2020). She was thereafter convicted of voluntary manslaughter and sentenced to prison for fifteen years. The DHS and guardian ad litem jointly moved to modify disposition

16

alleging that a material change of circumstances had occurred since disposition—that is, that "reunification between the [seventeen-year-old] child and petitioner was no longer possible," 2020 WL 5652426, at *2, because the mother "will not be eligible for parole until [the child] reaches adulthood," and that the child wished to be adopted by her foster family with whom she had formed a strong bond. *Id.* at *4. This Court affirmed the circuit court's order that modified disposition and terminated the mother's parental rights, in the best interest of the child.

Finally, in *In re H.P.*, No. 18-1117, 2019 WL 2452768 (W. Va. June 12, 2019) (memorandum decision), the petitioner mother stipulated to allegations of abuse and neglect that she and her boyfriend engaged in domestic violence in the presence of the child, H.P., and that they emotionally abused H.P. "by screaming in his face and calling him names." *Id.* at *1. After her boyfriend's visitation rights were suspended "due to his behavior, which frightened the children[,]" the mother was cautioned "that a continued relationship with [her boyfriend] could affect her ability to be reunified with her children." *Id.* A dispositional order was subsequently entered providing for a gradual transition and return of the children to the mother and terminating the boyfriend's custodial rights to the children for failing to address his issues relating to his mental health and domestic violence. *Id.* at *2. Upon learning that the boyfriend was living in the mother's home, the DHS moved to modify the dispositional order and to terminate her parental rights. The circuit court terminated the mother's parental rights, and this Court affirmed, concluding that her continued relationship with her boyfriend after his parental rights were terminated

17

"jeopardized the safety and security of the children" and "constituted a material change of circumstances to justify the modification of disposition[,]" in the best interest of the child. *Id.* at *3.[17]

This array of cases illustrates that a material change in circumstances warranting modification of a dispositional order under Rule 46 or West Virginia Code § 49-4-606(a) does not include new allegations of abuse and neglect against a respondent— that is, allegations for which the respondent has not been previously adjudicated. To conclude otherwise would improperly circumvent the constitutional and statutory protections to which parents, their children, and other respondents in these types of proceedings are entitled. *See In re A.P.-1*, 241 W. Va. at 694, 827 S.E.2d at 836.

We therefore hold that allegations of abuse and neglect for which a respondent has not been previously adjudicated do not constitute a material change of circumstances for purposes of modification of a dispositional order under Rule 46 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and West Virginia Code § 49-4-606(a). Such allegations must be pleaded in a verified petition or, pursuant to Rule 19 of the West Virginia Rules of Procedure for Child Abuse and Neglect

---

[17] *See also In re A.H.*, No. 23-596, 2025 WL 1766060 (W. Va. June 26, 2025) (memorandum decision); *In re R.C.*, No. 22-622, 2023 WL 3971866 (W. Va. June 13, 2023) (memorandum decision); *In re J.P.*, No. 19-0472, 2020 WL 6542021 (W. Va. Nov. 6, 2020) (memorandum decision); *In re T.H.*, No. 18-0719, 2019 WL 181492 (W. Va. Jan. 14, 2019) (memorandum decision); *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).

18

Proceedings, a verified amended petition, and adjudicated in accordance with the provisions of West Virginia Code § 49-4-601, *et seq.*

C.

The fundamental procedural deficiencies occurring below, including the failure to conduct both a preliminary hearing and an adjudicatory hearing on the allegations in the third amended petition, and to prepare and submit a case plan as required by statute, require that the order terminating petitioner's custodial rights to P.K. be vacated and the matter remanded for further proceedings.[18] As we have previously explained,

> the Rules of Procedure for Child Abuse and Neglect Proceedings and the related statutes detailing fair, prompt, and thorough procedures for child abuse and neglect cases are not mere general guidance; rather, they are stated in mandatory terms and vest carefully described and circumscribed discretion in our courts, intended to protect the due process rights of the parents as well as the rights of the innocent children.

---

[18] To the extent the circuit court may have terminated petitioner's custodial rights based upon her long-ago incarcerations and failed drug and alcohol screens that predated her reunification with P.K. and dismissal from the initial abuse and neglect proceeding, *see* n.11, *supra,* this was error. West Virginia Code § 49-4-601(i) requires that a "finding that a child is an 'abused child' or a 'neglected child' *must be based upon the conditions existing at the time of the filing of the abuse and neglect petition.*" Syl. Pt. 8, in part, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022) (emphasis added). We caution that, on remand, "[e]vidence that is 'not seasonable as remote in time' is not appropriate to support adjudication." *In re I.J.*, No. 23-353, 2024 WL 4789972, at *7 (W. Va., Nov. 14, 2024) (memorandum decision) (quoting *In re K.S.*, 246 W. Va. 517, 527, 874 S.E.2d 319, 329 (2022)).

19

*In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001). Accordingly, we have held:

> Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

*Id.* at 624, 558 S.E.2d at 623, syl. pt. 5.

## IV.    Conclusion

For the reasons stated above, we vacate the order of the Circuit Court of Lincoln County terminating petitioner's legal and physical custodial rights to P.K. and remand this case to the circuit court with directions to conduct further proceedings that comply with the procedures for abuse and neglect cases as discussed herein and with all other procedures that may apply. The Clerk is directed to issue the mandate contemporaneously with this Opinion.

Vacated and Remanded, with directions.

20